# STATE OF FLORIDA v BREWER

Case No. 66-545 CE

County Court, Hillsborough County

October 12, 1988

## APPEARANCES OF COUNSEL

**Don Masten** Assistant State Attorney, for plaintiff.

**William R. Mumbauer** for defendant.

## OPINION OF THE COURT

GASPER J. FICARROTTA, County Judge.

## OPINION AND ORDER ON MOTION TO SUPPRESS VIDEO TAPE

THIS CAUSE came on for hearing upon the Defendant's Motion to Suppress Video Tape, and the Court having heard the evidence and argument of counsel and being otherwise fully advised, the following opinion and order is entered:

1

## STATEMENT OF FACTS

On July 3, 1988, at approximately 3:20 A.M., Florida Highway Patrol Trooper Evans observed the Defendant's driving. Trooper Evans stopped the vehicle and made various observations of the Defendant. Trooper Evans requested the Defendant to take field sobriety tests, and Defendant agreed. After the field sobriety tests were completed, Trooper Evans placed the Defendant under arrest and transported him to Central Breath Testing where the Defendant performed physical sobriety tests on video. Prior to performing the physical sobriety tests on video, Trooper Evans read the printed instructions to the Defendant, a copy of said printed instructions are attached to this Order as Exhibit A. The Defendant then submitted to a chemical test to determine the alcohol content of his blood.

The Defendant has filed a Motion to Suppress the Video Tape alleging that he was advised prior to performing the physical test on video as follows:

"Should you refuse to perform these tests as I ask you, your refusal may be used against you in a court of law. Will you perform these tests?"

The Defendant performed the physical tests on video, and has now filed a Motion to Suppress the Video Tape, alleging that he was erroneously advised, and therefore the video tape should be suppressed. The Defendant's Motion to Suppress Video Tape relies on *Herring v State*, 501 So.2d 19 (Fla. 3d DCA 1986).

## OPINION

In the Court's opinion, the issue in this case is: Whether under Florida law, a Defendant, after arrest, is compelled to perform physical sobriety test when requested to do so by the arresting officer.

The Defendant argues that the physical sobriety tests are not compulsory and therefore it was improper for the arresting officer in this case to advise the Defendant that his refusal to perform such tests could be used against him in a court of law. The Defendant also argues that he agreed to perform the physical sobriety tests on video fearing that a refusal would be used against him in court.

There is no case law, statute, or procedural rule in Florida that requires a Defendant to submit to field sobriety tests after arrest. In the Court's opinion, a Defendant is not compelled to perform physical sobriety tests after arrest. It is important to note that the Defendant in this case did perform physical sobriety tests for Trooper Evans at the scene and he was placed under arrest after performing such physical

2

tests. If physical sobriety tests after arrest are not compulsory, then advising a Defendant that his refusal to perform the physical sobriety tests on video may be used against him in court is erroneous, and in the Court's opinion, could result in a Defendant submitting to the test who would otherwise refuse to perform such test on video after arrest.

The State relies on *State v Liefert*, 247 So.2d 18 (Fla. 2d DCA 1971) and *Duval Motor Company v Woodward*, 419 So.2d 303 (Fla. 1982), to support the proposition that performance of the physical sobriety tests on video is compulsory. *Liefert* is easily distinguished because it involves physical sobriety tests before arrest. In addition, in the *Liefert* case the Defendant agreed to perform the physical sobriety test for the arresting officer. The *Duval Motor* case involves an interpretation of Florida Statute 316.066(4) (traffic accident report privilege), and the opinion appears to limit itself to an application of that statute. Neither of these cases hold that the physical sobriety tests are compulsory.

An examination of Florida Statutes 316.193 (Driving under the influence) and 316.1932 (Breath, blood, and urine tests for alcohol, chemical substances or controlled substances, implied consent, right to refuse) reveals that there is no mention of physical sobriety tests in either of the statutory provisions. The Legislature of the State of Florida went to great pains to make these statutes very detailed and all encompassing. Florida Statute 316.1932 (implied consent) provides that under certain circumstances a chemical test of a person's breath is compulsory. If a person refuses, the statute outlines penalties for such refusal, i.e., suspension of license and admission of the refusal in court against the Defendant. The statute further outlines provisions for the Defendant to follow if he believes his refusal was justified, namely, filing a petition for hearing. If the Legislature intended physical sobriety tests to be compulsory, undoubtedly they would have included provisions in each of these statutes providing that physical sobriety tests were to be compulsory. In the absence of any statutory provisions covering physical sobriety tests, it is the Court's opinion that these physical sobriety tests, especially after arrest, are not compulsory.

The State argues that the physical sobriety tests are nonscientific tests. The Court is of the opinion that physical sobriety tests are either scientific or at least quasi-scientific tests. It is important to note the purpose of these physical sobriety tests. Normally an officer administers these physical sobriety tests and uses his observations of the Defendant during the performance of these tests as a basis for determining whether or not the Defendant was impaired at the time of driving. Before an officer is allowed to testify concerning his conclusions as to whether or not a person is impaired, the officer must be qualified and

3

trained in the administration of the field sobriety tests. The State must demonstrate that the officer is trained in interpreting his observations of the Defendant in order to reach an opinion as to whether or not the Defendant is impaired. The administration of the physical sobriety tests and the interpretation of the observations made during the physical sobriety test is, to say the least, quasi-scientific.

Based upon the foregoing, the Defendant's Motion to Suppress Video Tape is granted as to the portion of the video tape concerning the administration of the physical sobriety tests. This Order does not affect the remaining portions of the video tape.

DONE AND ORDERED in Chambers at Plant City, Florida, this 12th day of October, 1988.

## VIDEO PROCEDURE

The position of the arrestee for each part of the sobriety test is marked by numbered footprints on the floor. The officer will stand on the star with the number corresponding to the arrestee's position. Do not block the camera's view of the arrestee.

## INTERVIEWER'S DIALOGUE

(Have arrestee stand in footprints #3. Do not start test under Central Breath Testing operator is ready.)

"I am _____ of the (Department). It is now _____ A.M./P.M.

"What is your name?" (Response.)

"Please tell me your address and your social security number if you have one." (Response.)

"You have been placed under arrest and charged with driving while impaired.

"I am going to ask you to perform some tests to be recorded on videotape. The purpose of videotaping your performance is to preserve an accurate record of your physical faculties at this time as well as your ability to follow my instructions. Should you refuse to perform these tests as I ask you, your refusal may be used against you in a court of law. Will you perform these tests?" (Response. If arrestee refuses, skip to implied consent paragraph.)

"It is important for you to listen carefully to my instructions. You are not to begin performing the test until I have finished with instructions and the demonstration. If you have any questions about the test, be sure to ask at that time.

4

*TEST 1.* "Stand at the end of the yellow line with your hands down at your sides; walk heel to toe toward the wall for seven steps. Turn around and come back toward me walking seven steps. Count each step aloud. By heel to toe, I mean that the toe of one foot is to come into contact with the heel of the other foot on each step, like this." (Officer: demonstrate heel to toe with hands at side looking down at feet.) "Any questions? If not, please begin." (Officer, do not correct arrestee's performance or illustrate further after he has begun to perform the test.)

REVISED 5/27/88

EXHIBIT A

*TEST 2.* "Stand in footprints #2 and face the camera. With your arms at your sides, lift whichever foot you feel most comfortable with off the floor directly in front of you. Hold your foot in that position for a count of 30. Do not raise your arms from your sides. Count to 30 aloud. This is how to perform the test." (Demonstrate.) "You may remove your shoes to perform this test if you wish. Any questions?" (Again, do not correct arrestee after he has begun.)

*TEST 3.* "Stand in footprints #3 closest to the camera with your arms at your sides. Turn to your left and face the side wall. Tilt your head slightly back and close your eyes. Raise your right arm to your side with your palm facing forward, point your index finger and move your arm so that you point directly in front of you. Then bring your hand to your nose, touching the tip of your finger to the tip of your nose. Do not open your eyes during this test. Repeat the test with your left hand. Please watch me demonstrate this test." (Officer: demonstrate with eyes closed and head tiled back.)

*TEST 4.* "Do you know the alphabet? Please say the alphabet from A to Z. Speak the letters slowly, loudly, and clearly. Do *not* sing or chant the letters." (Arrestee performs test.)

*TEST 5.* "Count backwards starting with the number 64 and stopping with 46." (Arrestee performs test.)

"Please return to footprints #1. Listen carefully to what I am about to say:

*IMPLIED CONSENT:* "Florida law requires you to take a chemical test to determine the alcohol content of your blood and a urine test for controlled substances. If you refuse to submit to either or both of these tests, your driver's license will be suspended for at least one year. If you have had a suspension before this for refusing at submit to tests, your license will be suspended for 18 months. Additionally, your

**5**

refusal to submit to these tests can and will be used against you in a court of law. Do you understand what I have just ready to you?" (Arrestee responds.)

"Will you take these tests?" (Response.)

EXHIBIT A