570 So.2d 902 (1990)
Dominick OCCHICONE, Appellant,
v.
STATE of Florida, Appellee.
No. 71505.
Supreme Court of Florida.
October 11, 1990.
Rehearing Denied December 26, 1990.
*903 James Marion Moorman, Public Defender, and Douglas S. Connor, Asst. Public Defender, Bartow, for appellant.
Robert A. Butterworth, Atty. Gen., and Peggy A. Quince, Asst. Atty. Gen., Tampa, for appellee.
PER CURIAM.
Dominick Occhicone appeals his convictions of first-degree murder and sentence of death. We have jurisdiction pursuant to article V, section 3(b)(1), Florida Constitution, and affirm both his convictions and sentence.
*904 In the early morning hours of June 10, 1986 Occhicone awakened his former girlfriend by knocking on the sliding glass door to her bedroom in a house she shared with her children and her parents. The woman refused to talk with him and he left. He returned an hour or so later, armed with a handgun, and cut the telephone lines and roused the household. When the woman's father confronted him outside the house, Occhicone shot him. The woman and her daughter fled the house while Occhicone was breaking into it through a locked door. Once inside Occhicone shot the woman's mother four times. A jury found Occhicone guilty of two counts of first-degree murder and recommended death for each count. The trial court sentenced Occhicone to life imprisonment for killing the woman's father and to death for killing her mother.
As his first point on appeal, Occhicone argues that, during opening argument, the state anticipated his defense of insanity and argued proof that never came into evidence and that the trial court erred in overruling his objection to the prosecutor's opening statements.[1] Opening remarks are not evidence, and the purpose of opening argument is to outline what an attorney expects to be established by the evidence. Whitted v. State, 362 So.2d 668 (Fla. 1978). Our review of the record discloses no more than a good faith attempt to do that. Insanity had not been abandoned as a defense at that point, and we do not see how the prosecutor's brief reference to physicians being expected to testify at trial prejudiced Occhicone. The control of comments is within the trial court's discretion. Breedlove v. State, 413 So.2d 1 (Fla.), cert. denied, 459 U.S. 882, 103 S.Ct. 184, 74 L.Ed.2d 149 (1982). Occhicone has shown no abuse of discretion, and we find no merit to this point.
Occhicone also argues that the court erred in not granting his motion for mistrial based on a spectator's alleged misconduct. During voir dire, according to Occhicone, a spectator told a prospective juror that she thought Occhicone was guilty. When brought to its attention, the court questioned the spectator and Occhicone's niece, the person who claimed to have overheard the comments. Afterwards, the court denied Occhicone's motion for mistrial, finding that the jury pool had not been tainted. The court told defense counsel that he could ask the prospective jurors if they had heard the spectator say anything, but counsel did not so inquire during voir dire. The trial court promptly considered this alleged impropriety, and Occhicone has shown no abuse of discretion in the court's actions or rulings.
Occhicone relied on diminished capacity as a defense.[2] To refute Occhicone's claim that his state of constant intoxication prevented his knowing what he was doing, the state presented a deputy's testimony as to Occhicone's refusal to allow his hands to be swabbed for an atomic absorption test. The deputy stated that Occhicone pulled his hands away and said: "You're going to have to force me to [take the test]." The defense did not object to this testimony, but, later, tried to object to its admission. The court found the objection untimely because, at a bench conference prior to the deputy's testimony, the prosecutor stated exactly what the deputy would say and defense counsel did not object at that time or when the deputy testified. The prosecutor commented on this testimony during closing argument, and defense counsel objected to that comment.
Occhicone now argues that allowing the prosecutor to comment on his refusal to *905 take the hand swab test constituted penalizing him for exercising his post-Miranda[3] rights. We disagree and find Occhicone's reliance on Herring v. State, 501 So.2d 19 (Fla.3d DCA 1986), misplaced. In Herring the prosecutor argued that Herring's refusal to have his hands swabbed was convincing proof of his consciousness of his guilt. Herring's counsel objected to this argument, and the district court found reversible error. Here, on the other hand, the prosecutor commented on the evidence only to refute Occhicone's claim of diminished capacity, not to demonstrate his guilt, and defense counsel did not object in a timely manner. We find no merit to this issue.
We also find no merit to Occhicone's claim that the trial court erred in not telling Occhicone specifically that he had the right to testify in his own behalf. As Occhicone concedes, we decided this issue in Torres-Arboledo v. State, 524 So.2d 403 (Fla.), cert. denied, 488 U.S. 901, 109 S.Ct. 250, 102 L.Ed.2d 239 (1988), and we decline his invitation to revisit it.
Our review of the record discloses sufficient evidence to support Occhicone's convictions, and we affirm them.
The trial court found that three aggravating factors had been established: previous conviction of a violent felony; committed during a burglary; and cold, calculated, and premeditated. Occhicone now argues that the last factor should not have been found. The totality of the circumstances relied upon by the trial judge[4] support his finding the murder to have been committed in a cold, calculated, and premeditated manner with no pretense of moral or legal justification. When there is a legal basis to support finding an aggravating factor, we will not substitute our judgment for that of the trial court and, therefore, affirm this finding. The other aggravating factors are well supported by the record.
Using as a predicate his claim that the court should not have found cold, calculated, and premeditated, Occhicone also argues that death is disproportionate in his case. The cases he relies on are factually distinguishable. This case involved substantially more than a passionate obsession; it was the culmination of avowed threats to terminate the lives of parents standing between Occhicone and his former girlfriend. We do not find death a disproportionate sentence here.
Occhicone also claims the court committed reversible error in not defining the crime of burglary when instructing the jury on the aggravating factor of murder committed during the course of a burglary. We find no merit to this claim for several reasons. During the sentencing proceeding charge conference, Occhicone objected to all of the proposed aggravating circumstances. Regarding the instant one, he argued that "the facts, evidence and circumstances" did not support it. After hearing argument from both sides, the court held that the state could argue this factor and that the jury would be instructed on it. Occhicone did not object again and, most importantly, did not object on the *906 specific ground now advanced, i.e., failure to define burglary, or request the giving of such definition. "In order to preserve an issue for appellate review, the specific legal argument or ground upon which it is based must be presented to the trial court." Bertolotti v. Dugger, 514 So.2d 1095, 1096 (Fla. 1987). This claim, therefore, has not been preserved.
Even if the issue had been preserved, however, we would find any error regarding this instruction harmless. If the state proceeds in the guilt phase on theories of both premeditated and felony murder, the underlying felony must be defined. Franklin v. State, 403 So.2d 975 (Fla. 1981). Here, however, the state charged Occhicone with two counts of premeditated first-degree murder and the court instructed on and the state argued only premeditated murder. The state need not charge and convict of felony murder or any felony in order for a court to find the aggravating factor of murder committed during the course of a felony. Ruffin v. State, 397 So.2d 277 (Fla.), cert. denied, 454 U.S. 882, 102 S.Ct. 368, 70 L.Ed.2d 194 (1981). While the jury should have been told what constitutes burglary, the failure to do so is not fundamental error when there are other valid aggravating circumstances. The jury does not have to specify what factors it relied on in making its recommendation. Speculating that Occhicone's jury may have relied on one word without knowing its specific legal definition is of no moment here because the judge as the sentencer must make written findings supporting the sentence. We must assume that the instant judge knew the technical definition of burglary, and the facts[5] support his finding the mother's murder to have been committed during a burglary.
We find no merit to the rest of Occhicone's claims. Maynard v. Cartwright, 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988), did not make Florida's penalty instructions on cold, calculated, and premeditated and heinous, atrocious, or cruel unconstitutionally vague. Brown v. State, 565 So.2d 304 (Fla. 1990); Smalley v. State, 546 So.2d 720 (Fla. 1989). We find no support for Occhicone's claim that the prosecutor's cross-examination of witnesses "insinuated" that he had an extensive criminal record. Allowing a deputy to testify about the events leading to Occhicone's prior arrest and conviction of resisting arrest with violence was not error. Rhodes v. State, 547 So.2d 1201 (Fla. 1989); Dufour v. State, 495 So.2d 154 (Fla. 1986), cert. denied, 479 U.S. 1101, 107 S.Ct. 1332, 94 L.Ed.2d 183 (1987); King v. State, 436 So.2d 50 (Fla. 1983), cert. denied, 466 U.S. 909, 104 S.Ct. 1690, 80 L.Ed.2d 163 (1984). The court did not err in allowing lay witnesses to express their opinions as to Occhicone's not being intoxicated when they came into contact with him two to four hours after he committed these murders, especially in light of Occhicone's claiming that he lived in a constant state of intoxication. See Carroll v. State, 353 So.2d 1268 (Fla. 1st DCA 1978). Finally, we do not agree that the trial court impermissibly restricted the presentation of mitigating evidence by refusing to allow the introduction of four photographs of Occhicone's young son. The defense did not pursue the court's invitation to demonstrate the relevance of that many photographs, and, in light of Occhicone's testimony about the child and other witnesses' testimony that he did not treat the child well, we find no violation of Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978).
Therefore, in addition to his convictions we also affirm Occhicone's death sentence.
It is so ordered.
SHAW, C.J., and OVERTON, McDONALD, EHRLICH and BARKETT, JJ., concur.
GRIMES, J., concurs with an opinion, in which EHRLICH, J., concurs.
KOGAN, J., concurs in part and dissents in part with an opinion.
*907 GRIMES, Justice, concurring.
I write only to explain my position with respect to Occhicone's contention that the prosecutor's reference to his refusal to take hand-swab tests was an impermissible comment upon his right against self-incrimination. Occhicone refers to Herring v. State, 501 So.2d 19 (Fla.3d DCA 1986), in which the district court of appeal held that evidence of the defendant's refusal to take such a test which had been admitted to prove consciousness of guilt was reversible error.
Occhicone's contention must fail because the refusal to take the hand-swab test is not protected by the constitutional privilege that no one may be compelled to testify against himself. As noted in Macias v. State, 515 So.2d 206, 208 (Fla. 1987):
It was testimonial compulsion, rather than every kind of compulsion, for which the privilege was originated. 8 Wigmore, Evidence, § 2263 (1961). According to 4 S. Gard, Jones on Evidence, § 22:3, at 10 (6th ed. 1972), "[t]he more recent authorities clearly show a tendency to adhere to the Wigmore concept that only oral testimony and the production of documents or other objects by the witness, and acts of an assertive character, are within the privilege." (Footnote omitted.)
Just as he could have been required to submit to fingerprinting, photographing, or blood tests, Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), Occhicone could have been compelled to undergo the hand-swab test. Having refused to take the test, evidence of this fact was admissible for any relevant purpose. Thus, W. LaFave & J. Israel, Criminal Procedure § 7.2(c) (1985), states:
What happens if a defendant refuses to cooperate in an identification procedure which requires his active participation? One possibility is that the prosecutor may be permitted to comment on the refusal to cooperate. If the identification procedure in which the defendant has refused to participate or cooperate, such as a lineup or taking of exemplars, is not protected by the Fifth Amendment, then of course there is no right to refuse and thus the act of refusal is not itself a compelled communication. Rather, that refusal is considered circumstantial evidence of consciousness of guilt just as is escape from custody, a false alibi, or flight.
(Footnote omitted.)
In South Dakota v. Neville, 459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983), the United States Supreme Court considered whether evidence of a defendant's refusal to submit to a blood-alcohol test offended the right against self-incrimination. The Court held that the refusal to do so after a police officer had lawfully requested it was not an act coerced by the officer and thus not protected by the privilege against self-incrimination. The Court distinguished Doyle v. Ohio, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), which had held that a prosecutor could not use the defendant's silence after Miranda[6] warnings to impeach his testimony at trial because it was fundamentally unfair to assure a suspect that his silence would not be used against him and thereafter use his silence to impeach an explanation subsequently offered at trial. The Court said that, unlike the instruction in Doyle, it was not fundamentally unfair to use Neville's refusal to take the test as evidence of guilt. Even though he was not warned that his refusal could be used against him, Neville had not received any "misleading implicit assurances" as to the consequences of refusing the test. Neville, 459 U.S. at 565, 103 S.Ct. at 923.
This rationale also explains the distinction between the instant case and Wainwright v. Greenfield, 474 U.S. 284, 106 S.Ct. 634, 88 L.Ed.2d 623 (1986), upon which Occhicone also relies. In Greenfield, the United States Supreme Court held that the state could not introduce evidence of what the defendant said after receiving Miranda warnings in order to prove that he was sane. The Court explained that:

*908 Greenfield received "the sort of implicit promise to forgo use of evidence that would unfairly `trick' [him] if the evidence were later offered against him at trial." 459 U.S., at 566, 103 S.Ct., at 924.
474 U.S. at 293, 106 S.Ct. at 639 (footnote omitted).
Herring is inapplicable, not because the evidence of Occhicone's refusal to take the test was introduced to demonstrate diminished capacity rather than guilt, but because Herring is based on an erroneous premise. Unlike the case where Miranda warnings are given which advise the defendant that he has the right to refuse to make a statement, Occhicone was not told that he could refuse the hand-swab test. There was no misleading assurance. The fact that the police chose not to force him to take the test when he did refuse is irrelevant. Thus, the evidence of Occhicone's refusal was properly admitted and subject to comment by the prosecutor.
EHRLICH, J., concurs.
KOGAN, Justice, concurring in part and dissenting in part.
I concur with the majority's affirmance of the conviction of first-degree murder, but dissent as to the penalty. The trial judge found that the defendant at the time of the commission of the offense was under the influence of an extreme mental or emotional disturbance, that he was a heavy drinker, and an alcoholic who was also experiencing depression. The judge found that this depression and alcoholic condition combined to produce in the defendant an extreme mental or emotional disturbance; that fact, coupled with the bizarre facts of this case, indicate a crime committed by a mentally and emotionally disturbed individual. I can only conclude that death is not proportionate here. E.g., Fitzpatrick v. State, 527 So.2d 809 (Fla. 1988).
NOTES
[1] Occhicone had given notice of an intent to rely on insanity as a defense. After the trial started, the plea of not guilty by reason of insanity was supplanted by the claim that he lacked the capacity to form premeditated intent.
[2] In Chestnut v. State, 538 So.2d 820 (Fla. 1989), we disallowed using diminished capacity as a defense and held that evidence of an abnormal mental condition not constituting legal insanity is inadmissible to prove that a defendant could not have formed the specific intent needed to be held responsible for committing a crime. The intoxication defense is still allowed if it can be shown that the defendant is unable to entertain the requisite intent of premeditation. Gurganus v. State, 451 So.2d 817 (Fla. 1984).
[3] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[4] The trial court found, in part:

Statements by the defendant to female bartenders and to William Anderson within weeks of the murders revealed defendant's dislike for [the former girlfriend's] parents and his thoughts of murdering them. He also had expressed the thought of killing [her] parents while [she] watched, and he made statements to [her] which constituted threats against her relatives.
Defendant possessed a gun and bullets when he presented himself at the home of the murder victims at about 4:00 A.M. on June 10, 1986. He also damaged the telephone line at the residence and made the telephones inoperative before he shot and killed [the victim].
Although there appears to have been no acts or conduct on the part of [the victim] of a provoking or hostile nature, after breaking through a locked door, the defendant shot the victim four times, thereby bringing to fruition the numerous earlier expressed thoughts and threats.
Defendant had contemplated and verbalized this murder for days and weeks prior to June 10, 1986, and heightened premeditation existed when he, in an execution style, and without any pretense of justification, repeatedly shot at close range this unarmed grandmother.
[5] After shooting the father, Occhicone broke into the house through a locked door and killed the mother.
[6] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).