596 So.2d 775 (1992)
Alexander Christopher WILSON, Appellant,
v.
STATE of Florida, Appellee.
No. 90-845.
District Court of Appeal of Florida, First District.
April 6, 1992.
*776 John N.C. Ledbetter of Doyle & Ledbetter, P.A., Jacksonville, for appellant.
Robert A. Butterworth, Atty. Gen., Amelia L. Beisner, Asst. Atty. Gen., Tallahassee, for appellee.
SMITH, Judge.
Wilson appeals judgments of conviction and sentences imposed pursuant to jury verdicts finding him guilty of one count of violating the RICO statute, eight counts of forgery, and seven counts of uttering a forged instrument. We reverse appellant's RICO conviction, but affirm the others.[1]
The evidence at trial disclosed that four individuals were recruited by appellant in connection with appellant's scheme to obtain money using stolen and forged checks from various business enterprises in the Jacksonville area. Using the stolen checks, which had been made payable to the four individuals, appellant induced them to deposit the checks in their respective bank accounts, and then withdraw funds from those accounts, which funds were then shared by appellant and the four individuals. The evidence also included testimony by Officer William Bolena, of the Jacksonville Sheriff's Office, in which he stated that after being given his Miranda rights, appellant acknowledged that he recruited the four individuals to cash forged checks.
In his initial brief on appeal, appellant raised the following issues: (1) whether it was error to allow evidence of appellant's refusal to submit handwriting exemplars after being ordered by the court to do so; (2) whether the state in closing argument impermissibly commented upon appellant's right to remain silent; (3) whether it was error for the trial court to give an amended "flight" instruction relating to appellant's refusal to give the handwriting exemplars; (4) whether the state failed to establish venue in Duval County as to two of the alleged offenses; and (5) whether the trial court erred in sentencing appellant to a total of 105 years for his several offenses. During oral argument appellant's counsel informed the court that through inadvertence, the initial brief failed to address an issue pertaining to the RICO conviction, and counsel requested leave to file a supplemental brief on that issue. We granted counsel's request, and ordered supplemental briefs from both parties. The primary issue with respect to the RICO conviction is whether the state's evidence established the "enterprise" element under the RICO statute, since under the charge as contained in the information, and the evidence at trial, the "enterprise" was composed *777 solely of appellant. We find that only two of the issues raised require extended discussion, but the others will be addressed briefly.
On motion by the state, the trial court ordered appellant to provide handwriting exemplars. Copy of this order was sent to defense counsel. Appellant appeared at the sheriff's office at the time and on the date ordered by the court, but refused to provide the handwriting samples. At trial, over objection, the state was permitted to introduce evidence of appellant's refusal. Appellant argues on appeal, on authority of Herring v. State, 501 So.2d 19 (Fla.3d DCA 1986), that admission of this testimony was error because the state failed to prove that appellant knew the giving of handwriting exemplars was compulsory, and the state also failed to prove that appellant was apprised of the consequences of refusing to give the handwriting samples. We disagree.
In Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), the supreme court ruled that the Fifth Amendment privilege against self-incrimination protects an "accused's communications" but "offers no protection against compulsion to submit to fingerprinting, photographing, or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture." 86 S.Ct. at 1832 (emphasis added; footnote omitted). Accordingly, the Schmerber court upheld the taking of a blood sample. Shortly thereafter, on the authority of Schmerber, the Supreme Court ruled in Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), that the Fifth Amendment did not protect against the compulsory giving of handwriting exemplars.
As Professor LaFave observes:
If the identification procedure in which the Defendant has refused to participate or cooperate, such as a line-up or taking of exemplars, is not protected by the Fifth Amendment, then of course there is no right to refuse and thus the act of refusal is itself not a compelled communication. Rather, that refusal is considered circumstantial evidence of consciousness of guilt, and like similar evidence as escape from custody, ... false alibi, .. ., flight, ... suppression of evidence, and failure to respond to accusatory statements when not in police custody, ... its admission does not violate the privilege.
Wayne R. LaFave & Jerold H. Israel, Criminal Procedure, § 7.2(c)(1982), quoting, People v. Ellis, 65 Cal.2d 529, 421 P.2d 393, 55 Cal. Rptr. 385 (Cal. 1966) (ellipses in LaFave).
Subsequently, in South Dakota v. Neville, 459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983), the supreme court held that evidence of a defendant's refusal to submit to a blood test was admissible at trial because refusal is not an act coerced by an officer, and it makes no difference that the state did not warn the defendant of the possible consequences of refusal because "such a failure to warn was not the sort of implicit promise to forego use of evidence that would unfairly trick [the defendant] if the evidence were later offered against him at trial." 103 S.Ct. at 924. See also, LaFave, supra, at § 7.2(c) n. 26.
Notwithstanding the language of Neville that it "makes no difference" that the state did not warn the defendant of the consequences of refusal, the Third District in Herring held that it was error to allow proof of defendant's refusal to submit to a hand-swab test used for detecting gun powder residue, because there was no evidence that the defendant was told that his refusal to submit to the test could be used against him, and because there was no evidence that the defendant was aware of the compulsory nature of the test. The Herring court noted that in Neville the defendant had good reason not to refuse a blood alcohol test inasmuch as his refusal could result in his driver's license being taken away. The Herring court also noted the ruling in U.S. v. Hale, 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975), that a defendant's post-Miranda silence could not be used for impeachment because the silence had no probative value and any *778 reference to post-Miranda silence has an intolerably prejudicial impact. Thus, the Herring court concluded: "While Neville stands for the proposition that evidence of a defendant's behavior (refusal to take blood test) is admissible where the defendant had substantial motivation not to behave as he did, Hale stands for the corollary proposition that evidence of a defendant's behavior (remaining silent) is inadmissible, because not probative, where the defendant had no substantial motivation to behave as he did." 501 So.2d at 21 (emphasis supplied). The court reasoned in Herring that because the defendant was not told of the possible adverse consequences, he had no motivation to submit.
The decision in Herring was strongly criticized in Justice Grimes' concurrence, to which Justice Ehrlich concurred, in Occhicone v. State, 570 So.2d 902 (Fla. 1990), cert. denied, ___ U.S. ___, 111 S.Ct. 2067, 114 L.Ed.2d 471 (1991). Justice Grimes stated that Herring was based upon an erroneous premise, for in Miranda cases, such as Hale, a defendant is told he has a right to refuse to comply with a police request to make a statement or answer questions, whereas, in non-communication cases, i.e., cases where Miranda Fifth Amendment privileges are not at issue, a defendant is not told that he has a right to refuse. Thus, Justice Grimes postulates, there is nothing unfair about admitting into evidence a defendant's refusal to submit to a test because there was no "misleading assurance" in the first place. 570 So.2d at 908.
We are persuaded by Justice Grimes' view of Herring. There being no constitutional privilege against taking a test, such as providing a handwriting sample, it follows that there is significant probative value in a refusal to take such a test. There is no probative value, however, in exercising a constitutional right, such as the right to remain silent, because silence may be indicative of nothing more than a desire to exercise the right.
Even were we to apply the Herring standard, we do not think reversal would be required. At trial, appellant was specifically asked whether he had refused "to submit to Judge Southwood's order requiring you to provide handwriting exemplars," to which appellant responded: "Yes." Moreover, as above noted, appellant appeared at the sheriff's office on the date and at the time specified in the court order, and his counsel had a copy of the order. Thus, appellant's awareness of the court order was sufficiently established, and no reason is given why appellant should not be charged with general knowledge that court orders are to be obeyed. While appellant may not have had an appreciation for the exact nature of the adverse consequences he might suffer, the failure to submit under these circumstances is nevertheless probative even under the reasoning of Herring.
Turning to the second issue, we also find no merit with respect to the contention that the state was permitted to impermissibly comment on appellant's right to remain silent. First, we find that the prosecuting attorney's comment is not fairly susceptible to the interpretation that it was a comment on the appellant's right to remain silent.[2] Nevertheless, even if it was, appellate review is foreclosed because there was no objection. See, Clark v. State, 363 So.2d 331 (Fla. 1978). Contrary to appellant's argument, we find that no fundamental error was presented by these alleged inappropriate comments, since the essential fairness of the trial was not affected by this comment, alone or in combination with other alleged errors. See, Ray v. State, 403 So.2d 956 (Fla. 1981)(error is fundamental and hence can be raised on appeal absent objection if the error goes to the foundation of the case or goes to the merits of the cause of action).
*779 Regarding appellant's third issue, we find that the trial court did err in giving a modified "flight" instruction. At the request of the prosecution, the trial court instructed the jury as follows:
If you find that the Defendant in any manner endeavored to escape or evade a threatened prosecution by concealment or other after the fact indication of a desire to evade prosecution, such may be considered by you as a circumstance from which a consciousness of guilt may be inferred.
In Whitfield v. State, 452 So.2d 548 (Fla. 1984), the supreme court reversed a conviction where a similar instruction was used in connection with the defendant's refusal to submit to fingerprinting. The court held that the instruction "was an impermissible comment evaluating the evidence," adding that an instruction on flight is permitted in the limited circumstance where there is considerably more evidence than flight standing alone. Id. at 549.
The state argues that the Whitfield court found error in that case simply because there was no other evidence of guilt besides the defendant's flight to avoid prosecution. We do not agree with this analysis. The supreme court in Whitfield expressly approved Jackson v. State, 435 So.2d 984 (Fla. 4th DCA 1983), in which the district court reversed a conviction where the trial court instructed the jury on flight in connection with the conduct of the defendant in shaving his beard during the course of the trial. The evidence of guilt in Jackson consisted of more than defendant's change in appearance. The Whitfield court agreed with the Fourth District Court of Appeal "that the flight rationale should not be extended." 452 So.2d at 550. In Simpson v. State, 562 So.2d 742 (Fla. 1st DCA), rev. denied, 574 So.2d 143 (Fla. 1990), this court also relied, in part, upon Jackson in holding that it was error for the trial court to instruct the jury that it could infer a consciousness of guilt if it found that the defendant was endeavoring to evade prosecution and arrest by making false statements. See also, Redford v. State, 477 So.2d 64 (Fla.3d DCA 1985)(conviction overturned where the trial court had given an instruction that the giving of a false name by the accused following his arrest could be used as evidence of a consciousness of guilt).
We find, therefore, that the instruction given in this case was improper. However, we also find that the evidence of guilt was so overwhelming that the error must be considered harmless under State v. DiGuilio, 491 So.2d 1129 (Fla. 1986). All four of the individuals implicated with appellant were in substantial agreement in their testimony concerning appellant's conduct in forging and uttering stolen checks; and in addition, appellant confessed to the offenses after being fully advised of his Miranda rights.
The fourth issue, regarding venue, requires little discussion. Although there was a discrepancy in the testimony of two of the state's witnesses concerning when the $900 check given to the witness Banks by appellant was signed, there was ample evidence from which the jury could determine that the forgery occurred in Duval County, rather than in the adjoining county where the check was deposited.
Given our reversal of appellant's RICO conviction, appellant's aggregate sentence will be substantially reduced. Nevertheless, we find no error in the aggregate sentence of 105 years. Appellant was sentenced on the RICO count to a term of 30 years, which is a permissible sentence under section 775.082(3)(b), Florida Statutes. Appellant also received fifteen consecutive five-year sentences on the forgery and uttering counts, which is permissible under the forgery and uttering statutes, sections 831.01, .02, Florida Statutes (1989), which define these offenses as third-degree felonies.
It is undisputed that appellant's recommended guidelines sentence was life imprisonment. Appellant argues that his sentences, totalling 105 years, exceeds the permissible guidelines sentence of life imprisonment. Appellant points to section 775.082(3)(a), which provides that for conviction of a life felony the sentence shall be for a term of life, or a term not exceeding 40 *780 years. This statute, however, is inapplicable to the sentence in this case. The sentence imposed here was an aggregate sentence for conviction of 16 separate offenses. The statute cited by appellant applies only to the sentence for one life felony, not to multiple sentences for numerous felonies. As noted by the state, the total sentence imposed does not exceed the recommended range. Taylor v. State, 481 So.2d 97 (Fla.3d DCA 1986)(sentences totalling 288 years is a permissible sentence for a recommended guidelines sentence of life).
Finally, with respect to the RICO conviction, appellant argues that the conviction was improper because he was charged with associating with an enterprise that consisted only of the appellant.[3] It is clear that at trial the state charged that appellant himself was the enterprise; that is, that appellant was employed by or associated with himself to conduct or participate in a pattern of racketeering activity.[4] Furthermore, the prosecutor asserted in closing argument to the jury that with respect to the charge of racketeering, "the bottom line of the situation is that the defendant was acting as an enterprise." The prosecutor also argued: "We'll define enterprise because enterprise is going to be defined as any individuals, so an individual can be an enterprise, just as one of the jurors responded to me in jury selection how his father was running a business in and of itself and his business was an enterprise, ..."
The state's suggestion on appeal that the evidence established an enterprise consisting of the appellant, Leroy Robinson and Tim Cooper, is not well taken. Although one of the state's witnesses, Officer Bolena, testified that appellant stated after his arrest that he had worked for Robinson and Cooper, there was no attempt at trial by the state to portray Robinson and Cooper as belonging to the enterprise. Similarly, there was no effort on the part of the state to establish that the four individual accomplices (Banks, Whatley, Bell and Anderson) along with appellant constituted the enterprise. Instead, as appellant points out, the actions of these individuals with respect to appellant constituted part of the "pattern of racketeering" element of the RICO offense. See, Boyd v. State, 578 So.2d 718 (Fla.3d DCA), rev. denied, 581 So.2d 1310 (Fla. 1991) (in order to establish an enterprise under the RICO statute, the state must prove: (1) an on-going organization, (2) the various associates of which function as a continuous unit, and (3) that the organization has an existence separate and apart from the racketeering activity in which it engages).
The state has argued that this court's decision in State v. Bowen, 413 So.2d 798 (Fla. 1st DCA 1982), rev. denied, 424 So.2d 760 (Fla. 1983), is controlling. In Bowen, the defendant was the sole proprietor of a mini-storage warehouse in which he bought and sold gold and silver. In his defense, the defendant argued that since he was acting as an individual he could not be considered an enterprise for purposes of the RICO Act. Rejecting this contention, this court held that an individual associating with an enterprise composed only of himself is nevertheless covered by the RICO statute. We said:
"[E]nterprise," as defined by Section 943.461(3), means "any" individual or sole proprietorship. The inclusion of "any" within the definition clearly suggests a legislative intent to direct the thrust of the RICO Act against an individual "associating with himself." Had the legislature not intended to reach individuals such as Bowen, it could easily have narrowed the sweep of Section 943.461(3), *781 by supplanting "any" with "another." (Citations omitted).
Bowen, 413 So.2d at 799.
As pointed out by appellant, the holding in Bowen that the same person can fill both slots of the RICO pattern: (1) the person associating with the enterprise and (2) the enterprise itself, has been rejected in several decisions. For example, in Masonoff v. State, 546 So.2d 72, 74 (Fla.2d DCA), rev. dismissed, 553 So.2d 1166 (Fla. 1989), the Second District found the reasoning in Bowen "unconvincing," stating that "[i]f solo crimes by a self-employed person violated [the RICO Act] then the crime of racketeering, with its increased penalties, would apply to a substantial percentage of crimes." Id. The Masonoff court found the fact that the defendant in Bowen operated through a sole proprietorship to be immaterial: "The relationship of a person with an enterprise requires a relationship involving two humans  not a person and some type of property interest." Id. See also, Craver v. State, 561 So.2d 1251 (Fla. 2d DCA 1990) (motion for judgment of acquittal improperly denied under Masonoff where defendant was prosecuted as a "oneman enterprise"); and State v. Nishi, 521 So.2d 252 (Fla.3d DCA), rev. denied, 531 So.2d 1355 (Fla. 1988) (defendant could not be employed by or associated with himself as an enterprise under RICO).
Further, appellant cites several federal decisions which he asserts are at odds with Bowen. See, U.S. v. Benny, 786 F.2d 1410 (9th Cir.), cert. denied, 479 U.S. 1017, 107 S.Ct. 668, 93 L.Ed.2d 720 (1986) (defendant may be convicted for associating with an enterprise that is the defendant's sole proprietorship when the sole proprietorship includes other individuals); McCullough v. Suter, 757 F.2d 142 (7th Cir.1985)(a sole proprietorship can be an enterprise under RICO so long as there are other individuals working in the organization besides the sole proprietorship); U.S. v. Computer Sciences, 689 F.2d 1181 (4th Cir.1982), cert. denied, 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983) (the term enterprise was meant to refer to a being different from, not the same as or part of, the person whose behavior the RICO act was designed to prohibit). Appellant accurately observes that this court did not have the benefit of these subsequently issued federal decisions when Bowen was decided, and since the Florida RICO statute is patterned after the federal statute, appellant suggests these decisions should be accorded great weight in construing the Florida RICO Act.[5]
There is no question that a sole proprietorship can be an enterprise under Florida law, as can an individual. Section 895.02(3), Florida Statutes (1989); see also, Bowen, supra. In this case however, no entity separate from the appellant, such as a sole proprietorship, was alleged to exist. As noted, in the charging information appellant himself was specifically alleged to be the enterprise as well as the person who associated with the enterprise. Without some sort of identifiable legal or de facto entity which stands apart from the associating person, it cannot be said that an "association" has occurred.[6] Therefore, we distinguish Bowen from the instant case, as did the court in Day v. State, 541 So.2d 1202 (Fla.2d 1988), rev. denied, 545 So.2d 869 (Fla. 1989), which reversed a conviction under RICO where a single individual was the associating defendant as well as the enterprise. With reference to Bowen, the Day court stated:
It may be that in some instances a lone actor can be considered an enterprise for RICO purposes when the business is distinct from the individual. There must, *782 however, be a separate and identifiable entity through which criminal activity is conducted.
541 So.2d at 1203. See also, State v. Smith, 532 So.2d 1112, 1113 (Fla.2d DCA 1988), rev. denied, 542 So.2d 990 (Fla. 1989) (even in cases such as Bowen, which involved only one person, there was "a separate and identifiable entity" through which the criminal activity was conducted).
Accordingly, appellant's conviction and sentence for violation of the RICO statute is REVERSED. The remaining convictions are AFFIRMED. However, because appellant was sentenced using a Category 9 (RICO) scoresheet, this cause is remanded for resentencing of appellant using a Category 6 scoresheet applicable to the offenses of forgery and uttering.
JOANOS, C.J., and BOOTH, J., concur.
NOTES
[1] In response to appellant's motion for rehearing or clarification, this court's opinion and decision filed February 11, 1992 was withdrawn by unpublished order, and this opinion was substituted. The substituted opinion and decision is identical to the original except for language added to the final paragraph to provide for remand and resentencing under a Category 6 guideline scoresheet.
[2] While remarking on the fact that appellant refused to submit handwriting exemplars, the prosecutor stated during closing:

If you're to believe that [appellant] was in Georgia, [when the offenses were committed] why didn't he say, all right, I'll sign? Where do I sign? I'll write a hundred of them for you and that's going to get me out. That's going to prevent me from  that's going to prove to you that I didn't sign anything, that this was not me.
[3] In view of our reversal of the RICO conviction based on the reasoning outlined above, it is unnecessary to address appellant's argument regarding the sufficiency of proof of racketeering activity.
[4] The amended information charges that appellant, Alexander Christopher Wilson, "was associated with an enterprise, to-wit: Alexander Christopher Wilson, ... and that the said Alexander Christopher Wilson ... did conduct or participate directly or indirectly, in the affairs of the said enterprise through a pattern of racketeering activity... ."
[5] While the Florida act is substantially similar to its federal analog, there are differences. First, as defined in Florida law, enterprise "means" any individual, partnership, corporation, and so on; in federal law, the term enterprise "includes" the various entities enumerated in 18 U.S.C. § 1961 (4). Further, the Florida definition of enterprise explicitly contains reference to a "sole proprietorship" while its federal counterpart does not.
[6] Section 895.03(3) provides that it is unlawful for any person employed by or associated with an enterprise to conduct or participate in such an enterprise through a pattern of racketeering activity. The amended information charged appellant with associating with, rather than being employed by, an enterprise.