648 So.2d 701 (1995)
STATE of Florida, Petitioner,
v.
James E. TAYLOR, Respondent.
No. 82631.
Supreme Court of Florida.
January 5, 1995.
*702 Robert A. Butterworth, Atty. Gen., and Peggy A. Quince, Susan D. Dunlevy, Tampa, and Amelia L. Beisner, Tallahassee, Asst. Attys. Gen., for petitioner.
Robert E. Jagger, Public Defender, and Terry M. Staletovich, Asst. Public Defender, Sixth Judicial Circuit, Clearwater, for respondent.
SHAW, Judge.
We have for review a decision presenting the following certified question of great public importance:
IS A DUI SUSPECT'S REFUSAL TO SUBMIT TO PRE-ARREST FIELD SOBRIETY TESTS ADMISSIBLE IN EVIDENCE?
Taylor v. State, 625 So.2d 911, 913 (Fla. 2d DCA 1993). We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. We answer in the affirmative as explained below and quash the decision of the district court.

I. FACTS
Officer Quant observed Taylor's automobile traveling at a high rate of speed on August 10, 1991, in St. Petersburg. Quant made a U-turn and pursued the vehicle. When Taylor stopped to drop off a passenger, Officer Quant approached, asked to see his driver's license and registration, and asked him to exit the car. Quant noted that Taylor "staggered out" of the vehicle, and had a "strong odor of alcoholic beverages, slurred speech, and watery, bloodshot eyes." Taylor asked if he would be requested to do any field sobriety tests, which are simple physical tasks designed to test coordination, e.g., finger-to-nose, walk-the-line, stand-on-one-foot, *703 etc.[1] Quant responded that he would be, and Taylor replied that he had been told by his lawyer not to perform any tests and he was going to follow that advice.
Officer Quant explained the purpose of the tests and Taylor again refused. Quant arrested him. At the stationhouse, Taylor was read Florida's implied consent law, which provides that once a person is arrested for any crime while operating a motor vehicle, he or she may be asked to submit to alcohol or substance tests. See § 316.1932, Fla. Stat. (1991). These post-arrest tests are sophisticated blood, urine, and breath tests, which differ substantially from the simple pre-arrest field sobriety tests noted above. Taylor acknowledged that he understood the law, but refused to take a breath test.
Taylor was charged with driving under the influence of an intoxicating substance (DUI) and, prior to trial, moved to suppress his refusal to take the field sobriety tests. He argued that he had not been told by police that he was required to take the tests or that his refusal could be used against him. Officer Quant testified that although he did not specifically advise Taylor that his refusal could be used against him, he did tell him that there could be adverse consequences to refusal:
Q. Did you tell him that there would be adverse consequences upon not doing those tests?
A. Yes, ma'am. We did have one of our officers retrieve the video camera from the cruiser. I did ask again if he would. I explained to him the purpose of the test and he did state that he would refuse. I explained to him that by his refusal that I would have to take up what I had seen to that point in making a decision as far as to whether or not he was impaired.
The county court granted the motion to suppress, ruling that Taylor had not been told the tests were compulsory or that refusal would have adverse consequences. The circuit court reversed. The district court then quashed the circuit court order, ruling that "it would be unfair to admit an individual's refusal to submit to a test as circumstantial evidence of his consciousness of guilt where he was not advised of the consequences attaching to his refusal." Taylor, 625 So.2d at 912. The court certified the above question.
Taylor contends that admission of his refusal would violate his constitutional rights and that his refusal is not probative of guilt.

II. LEGAL ISSUES
Taylor's refusal was obtained in conformity with the Fourth Amendment. The United States Supreme Court held in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and subsequent cases that certain investigative stops are permissible under the Fourth Amendment when based on an officer's reasonable suspicion that criminal activity is afoot. This rule is codified in section 901.151, Florida Statutes (1991):
Whenever any law enforcement officer of this state encounters any person under circumstances which reasonably indicate that such person has committed, is committing, or is about to commit a violation of the criminal laws of this state ... he may temporarily detain such person for the purpose of ascertaining the identity of the person temporarily detained and the circumstances surrounding his presence abroad which led the officer to believe that he had committed, was committing, or was about to commit a criminal offense.
§ 901.151(2), Fla. Stat. (1991).
When Taylor exited his car, he staggered and exhibited slurred speech, watery, bloodshot eyes, and a strong odor of alcohol. This, combined with a high rate of speed on the highway, was more than enough to provide Quant with reasonable suspicion that a crime was being committed, i.e., DUI. The officer was entitled under section 901.151 to conduct a reasonable inquiry to confirm or deny that probable cause existed to make an arrest. Quant's request that Taylor perform *704 field sobriety tests was reasonable under the circumstances and did not violate any Fourth Amendment rights.
Taylor's refusal does not constitute compelled self-incrimination, and its use at trial does not offend due process principles. The United States Supreme Court ruled in South Dakota v. Neville, 459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983), that a suspect's refusal to submit to a post-arrest blood-alcohol test could be admitted at trial even though police failed to warn the suspect that refusal could be used against him in court. The Court reasoned that the Fifth Amendment privilege against compelled self-incrimination was inapplicable because, given the painless nature of the test, there was no compulsion to refuse, and the Due Process Clause was not violated because the suspect was not misled into believing that refusal was a "safe harbor" free of adverse consequences, i.e., he was told that he could lose his license.
The same rationale applies here. Taylor's refusal was not compelled in any way since he was given a choice whether to submit to the tests or not, and the tests themselves are noninvasive, painless, and commonplace. Thus, the refusal was not elicited in violation of the Fifth Amendment privilege against compelled self-incrimination. Nor was Taylor misled concerning the consequences of refusal. Although Officer Quant did not expressly tell him that his refusal could be used against him in court, he did explain the purpose of the tests and told him of possible adverse consequences, i.e., he could be arrested based on the available evidence. Use of his refusal at trial thus does not violate the Due Process Clause of our state or federal constitutions.

III. EVIDENTIARY ISSUES
The provisions of the Florida Evidence Code defining relevant evidence and governing its admissibility are set forth in chapter 90, Florida Statutes (1991):
90.401 Definition of relevant evidence.  Relevant evidence is evidence tending to prove or disprove a material fact.
90.402 Admissibility of relevant evidence.  All relevant evidence is admissible, except as provided by law.
§§ 90.401, .402, Fla. Stat. (1991). Professor Ehrhardt explains further: "The concept of `relevancy' has historically referred to whether the evidence has any logical tendency to prove or disprove a fact. If the evidence is logically probative, it is relevant and admissible unless there is a reason for not allowing the jury to consider it." Charles W. Ehrhardt, Florida Evidence § 401.1 at 95-96 (1994) (footnote omitted).
Taylor argues that his refusal to take the tests is not probative of the issue of guilt because his refusal may have been motivated by a factor other than guilt, such as a simple desire to end the encounter with Officer Quant. We reject this argument. When Officer Quant confronted Taylor, he watched him stagger out of his car and noticed a strong odor of alcohol, slurred speech, and watery, bloodshot eyes. Officer Quant asked him twice to take the field sobriety tests, explained the purpose of the tests, and warned Taylor that if he refused to take the tests he, Quant, would be forced to make a decision concerning arrest based on his observations up to that point.
Taylor had ample incentive to take the tests: He was aware of the circumstances surrounding the officer's request; he knew the purpose of the tests; and he had ample warning of possible adverse consequences attendant to refusal. Further, he has had some experience in this area  the state attorney asked the trial court to take judicial notice of his prior driving record which included two DUI convictions. Taylor had expressly discussed with his lawyer the advisability of taking field sobriety tests. Given the strong incentives to take the tests, Taylor's claim that his refusal was an innocent act loses plausibility. In short, he knew that refusal was not a "safe harbor" free of adverse consequences and acted in spite of that knowledge. His refusal thus is relevant to show consciousness of guilt. If he has an innocent explanation for not taking the tests, he is free to offer that explanation in court.

*705 IV. CONCLUSION
We hold that Taylor's refusal to take the field sobriety tests was not elicited in violation of his statutory or constitutional rights and its use at trial does not offend constitutional principles. We further hold that the refusal is probative of the issue of consciousness of guilt. We quash the decision of the district court and answer the certified question in the affirmative as explained in this opinion. We remand for proceedings consistent with this opinion.
It is so ordered.
GRIMES, C.J., OVERTON and HARDING, JJ., and McDONALD, Senior Justice, concur.
KOGAN, J., dissents with an opinion.
KOGAN, Justice, dissenting.
I would answer the certified question in the negative based on article I, section 9 of the Florida Constitution, which states that residents of this state may not be compelled to be witnesses against themselves in any criminal matter. To permit evidence of a refusal to take sobriety tests is little better than informing the finder of fact that the defendant refused to deny guilt. I further would hold that a roadside sobriety test may only be conducted on the basis of probable cause. People v. Carlson, 677 P.2d 310 (Colo. 1984); Jones v. State, 459 So.2d 1068 (Fla. 2d DCA 1984).
NOTES
[1] The parties do not argue that the tests here required a testimonial response. Cf. Allred v. State, 622 So.2d 984 (Fla. 1993) (field sobriety tests requiring a testimonial response implicate the privilege against compelled self-incrimination under the Florida Constitution and require Miranda warnings).