793 So.2d 1029 (2001)
STATE of Florida, Petitioner,
v.
Clotilde Estela MENNA, Respondent.
No. 5D01-387.
District Court of Appeal of Florida, Fifth District.
July 13, 2001.
Rehearing Denied September 14, 2001.
Robert A. Butterworth, Attorney General, Tallahassee, and Belle B. Schumann, Assistant Attorney General, Daytona Beach, for Petitioner.
Michael J. Snure of Kirkconnell, Lindsey and Snure, P.A., Winter Park, for Respondent.
COBB, J.
The state seeks certiorari review of an order of the trial court excluding evidence of the defendant's failure to submit to a gunshot residue test. The defendant was charged with the first-degree murder of her husband. The defendant filed a motion in limine to exclude evidence that the defendant refused to submit to a gunshot residue test. The trial court held an evidentiary hearing and subsequently granted the defendant's motion.
The trial court found the following facts: Two detectives from the Orange County Sheriffs Office met with the defendant at the hospital after the defendant's husband's death. The defendant was not in custody at this time. The detectives informed the defendant that they would like to perform a non-invasive swabbing of the defendant's hands to eliminate the possibility that the defendant had recently fired a gun. The detectives informed the defendant that technicians would be there shortly to conduct the test. The detectives did not tell the defendant that her refusal to take the test could be used in court nor did they tell her that it would not be used in court. The detectives did not tell the defendant that she was required to take the test. The defendant attempted to contact her attorney but was unsuccessful. A detective testified that shortly after this conversation, the defendant refused to take the test, and visited the bathroom several *1030 times and came out drying her hands, apparently having washed them.
The trial court relied on Herring v. State, 501 So.2d 19 (Fla. 3d DCA 1986) in concluding that the defendant did not know that her refusal to take the test was anything but a "safe harbor" and she was never apprised of the adverse consequences which might result from her refusal to take the test. Therefore, her refusal did not reflect a consciousness of guilt. On this basis, the trial court suppressed the evidence.
The state contends the trial court departed from the essential requirements of the law in excluding the evidence. The state argues that Herring has in effect been overruled by the Florida Supreme Court in Occhicone v. State, 570 So.2d 902 (Fla.1990), cert. denied, 500 U.S. 938, 111 S.Ct. 2067, 114 L.Ed.2d 471 (1991) and rejected by this court in State v. Burns, 661 So.2d 842 (Fla. 5th DCA 1995), rev. dismissed, 676 So.2d 1366 (Fla.1996). The defendant contends that the rationale in Herring is sound and the Florida Supreme Court has subsequently utilized its rationale. See State v. Taylor, 648 So.2d 701 (Fla.1995).
In Herring, a defendant, shortly after his arrest on a charge of first-degree murder, was asked if he would submit to a "hand swab test for gunshot residue." The defendant was not told that he was required by law to take the test nor that his refusal to do so could be used against him. At trial, testimony of the defendant's refusal to "have his hands swabbed" was admitted over the defendant's objections. The Third District held that because the defendant was not told that his refusal to submit to the test would have adverse consequences to him he had no motivation to submit and his refusal was a "safe harbor." Id. at 21. The court reasoned that because a person's natural inclination is to proceed to a "safe harbor," his decision to do so cannot be considered circumstantial evidence probative of his consciousness of guilt. The court, in rejecting the state's argument that because the test was compulsory the defendant's refusal was admissible, reasoned that in order for the defendant's refusal to have any probative value as to the defendant's consciousness of guilt, the defendant must be aware of the compulsory nature of the test. Id. at 21.
In Occhicone, the Court distinguished Herring from a case where a defendant asserted a defense of diminished capacity and the state sought to introduce evidence of the defendant's refusal to allow his hands to be swabbed for a gunshot test to refute the defendant's claim that his state of constant intoxication prevented his knowing what he was doing. The distinction between Herring and Occhicone is that in Herring the evidence was to be used to show consciousness of guilt while in Occhicone the evidence was only used to refute the defendant's diminished capacity claim. The state relies on a separate concurrence of Justice Grimes which questions the basis for the decision in Herring.
Justice Grimes' separate opinion has been cited with approval in Wilson v. State, 596 So.2d 775 (Fla. 1st DCA 1992) and State v. Burns. In Wilson the court questioned the reasoning in Herring and allowed evidence of the defendant's refusal to submit to a court ordered handwriting exemplar test. In Burns this court, without reference to Herring, held that evidence of the defendant's refusal to perform physical non-testimonial field sobriety tests was admissible, citing Wilson and relying on Justice Grimes' separate opinion in Occhicone. Justice Grimes' special concurrence in that case set forth the applicable law:
GRIMES, Justice, concurring.
I write only to explain my position with respect to Occhicone's contention *1031 that the prosecutor's reference to his refusal to take hand-swab tests was an impermissible comment upon his right against self-incrimination. Occhicone refers to Herring v. State, 501 So.2d 19 (Fla. 3d DCA 1986), in which the district court of appeal held that evidence of the defendant's refusal to take such a test which had been admitted to prove consciousness of guilt was reversible error.
Occhicone's contention must fail because the refusal to take the hand-swab test is not protected by the constitutional privilege that no one may be compelled to testify against himself. As noted in Macias v. State, 515 So.2d 206, 208 (Fla.1987):
It was testimonial compulsion, rather than every kind of compulsion, for which the privilege was originated. 8 Wigmore, Evidence, § 2263 (1961). According to 4 S. Gard, Jones on Evidence, § 22:3, at 10 (6th ed.1972), "[t]he more recent authorities clearly show a tendency to adhere to the Wigmore concept that only oral testimony and the production of documents or other objects by the witness, and acts of an assertive character, are within the privilege." (Footnote omitted).
Just as he could have been required to submit to fingerprinting, photographing, or blood tests, Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), Occhicone could have been compelled to undergo the hand-swab test. Having refused to take the test, evidence of this fact was admissible for any relevant purpose. Thus, W. LaFave & J. Israel, Criminal Procedures § 7.2(c) (1985), states:
What happens if a defendant refuses to cooperate in an identification procedure which requires his active participation? One possibility is that the prosecutor may be permitted to comment on the refusal to cooperate. If the identification procedure in which the defendant has refused to participate or cooperate, such as a lineup or taking of exemplars, is not protected by the Fifth Amendment, then of course there is no right to refuse and thus the act of refusal is not itself a compelled communication. Rather, that refusal is considered circumstantial evidence of consciousness of guilt just as is escape from custody, a false alibi, or flight.
(Footnote omitted).
In South Dakota v. Neville, 459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983), the United States Supreme Court considered whether evidence of a defendant's refusal to submit to a blood-alcohol test offended the right against self-incrimination. The Court held that the refusal to do so after a police officer has lawfully requested it was not an act coerced by the officer and thus not protected by the privilege against self-incrimination.
In addition to Burns, our opinion in State v. Sowers, 442 So.2d 239 (Fla. 5th DCA 1983), which the parties and the trial court seemingly have overlooked, relied upon the United States Supreme Court case of South Dakota v. Neville, 459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983) and held that the introduction of evidence in a criminal case that a defendant refused to submit to a chemical test for intoxication did not violate the United States Constitution nor the Florida Constitution.
The key question posed by the instant petition is whether our prior opinions in Burns and Sower are in conflict with, and therefore superseded by, the opinion of the Florida Supreme Court in Taylor. Can Taylor be reconciled with the view expressed in the special concurrence of Justice Grimes in Occhicone?
*1032 In Taylor the Florida Supreme Court held that the refusal by a DUI suspect to submit to a pre-arrest field test was admissible in evidence against him. The Court noted that Taylor had not been misled by the police "into believing that refusal was a `safe harbor' free of adverse consequences, i.e., he was told that he could lose his license." Taylor was not told that his refusal could be used against him in court. The Court noted that Taylor knew there were possible adverse consequences in refusing to take the test such as loss of license and the prospect of prosecution; in other words, his refusal did not provide a "safe harbor" free of adverse consequences. His refusal therefore was relevant to show consciousness of guilt. Although Taylor cites to Neville, it makes no mention of Herring.
Menna argues that because she was unaware of any adverse consequences attendant upon her refusal to submit to the gunshot residue test, her refusal, unlike Taylor's, cannot be construed as showing consciousness of guilt. But the record in this case shows that she was told that the proposed test could clear her from prosecution; the converse of that eventuality would be the possibility, if not probability, of prosecution for murder, surely an adverse consequence. Moreover, there is nothing in the Taylor opinion that could be construed as a repudiation of the special concurrence of Judge Grimes in Occhicone or of our prior opinions in Burns or Sowers.
We find that the trial court did not apply the correct law to this case. See Haines City Community Development v. Heggs, 658 So.2d 523 (Fla.1995). Accordingly, we grant the state's petition for certiorari, and quash the in limine order of suppression. We certify conflict with Herring.
PETITION GRANTED; ORDER QUASHED.
THOMPSON, C.J., and ORFINGER, R.B., J., concur.