220 So.2d 416 (1969)
STATE of Florida, Appellant,
v.
Anthony ESPERTI, Appellee.
No. 69-10.
District Court of Appeal of Florida. Second District.
March 14, 1969.
Rehearing Denied April 10, 1969.
*417 Earl Faircloth, Atty. Gen., Tallahassee, and Arden M. Siegendorf, Asst. Atty. Gen., Miami, for appellant.
William M. Moran, Miami, for appellee.
McNULTY, Judge.
The State of Florida brings an Interlocutory Appeal, pursuant to § 924.07(1) F.S.A., from an order of the trial court entered on the defendant-appellee's Motion to Suppress certain evidence.
The defendant is in custody without bail under an indictment charging premeditated first degree murder. He was arrested within a matter of a few hours after the perpetration of the homicide in question and probable cause for his arrest for murder is not questioned, nor is the lawfulness of custody at the times material hereto.
At the police station shortly after his arrest, the officers told the defendant, in the presence of the defendant's attorney, that they were going to administer a chemical test to ascertain the presence vel non of nitrate, or powder burns, which could indicate whether the defendant had recently fired a gun. Defendant's counsel demanded of the officers that they first procure a search warrant, and, further, informed them that he had advised the defendant to voluntarily submit to such test upon production of a search warrant so directing. It is also without dispute that the officers had reasonable time and opportunity to apply for and obtain a search warrant if they so desired.
Notwithstanding the foregoing, however, as soon as the defendant's attorney left the police station the officers attempted to administer the aforesaid chemical test. At this point, the defendant refused to submit thereto. In an apparent effort to frustrate the test, he spat on his hands, wiped them with a handkerchief and tried to rub tobacco ashes on them. (It's significant to note here, that a technician testified that the presence of nitrate can be explained by cigarette ashes, among other things, as well as gun powder burns.) The officers nonetheless overpowered the defendant and the test was forcibly administered.
Defendant's Motion to Suppress sought to exclude from evidence both the results of the chemical test and any testimony concerning his acts and conduct surrounding resistance to the administration thereof. The trial court denied defendant's Motion to Suppress the results of the test, but granted the motion as to any evidence of the defendant's actions in resistance thereto. In neither ruling did the court set forth its reasoning. The State is appealing the latter portion of the court's ruling, and the defendant's cross-appeal as to the first portion has been withdrawn.
Since the trial judge denied the Motion to Suppress as to the results of the chemical test without opinion, we must assume that he rejected defendant's arguments, made both here and below, that the results of the test were inadmissible under the 4th, 5th, 6th and 14th Amendments to the United States Constitution.[1] At the outset, we need not go into the correctness of the trial court's ruling in this regard. Nor do we have to decide, at this time, whether results of the chemical test involved here are admissible in Florida. The record discloses no reason to assume *418 that the suppression of such evidence at this stage of the proceedings would terminate the prosecution, and thus the case has to be tried. Both sides will have an opportunity at trial, during the proffer of such evidence, to preserve the record as to their rights in the premises; and it would be premature, if not inappropriately presumptuous, for us to advise the experienced and very able trial judge how he should rule on such proffer. If the trial does not result in an acquittal, or the questions involved do not otherwise become moot, they may again have to be reviewed on a direct appeal.
Now, the thrust of the State's appeal is that the administration of the chemical test in question was lawful in the first instance, and that therefore, evidence of the defendant's refusal to submit thereto, and of his actions and conduct in so refusing, would be admissible to show circumstances from which a consciousness of guilt might be inferred by the trier of fact. As noted, the trial court's order in suppressing this evidence is silent as to the grounds relied on. But, to fully answer the questions posed by the State's position, and because the trial judge denied the Motion to Suppress as to the results of the test (a ruling we are not reviewing here, as we've said), we assume the results of the test itself are admissible.
We must assume, further, that the trial court suppressed the evidence of the defendant's refusal to submit to such test on one or both of two grounds: either, first, that the evidence was irrelevant and/or incompetent to establish circumstances from which a consciousness of guilt might be inferred; or secondly, that such evidence is a "testimonial or communicative by-product" of the scientific test involved and, as such by-product, falls within the privilege against self-incrimination. There are no other considerations pointed out to us under which such evidence could be ruled out, and we are aware of none.
As to the first ground, i.e. admissibility of such evidence to show a consciousness of guilt, we see no substantive difference between the actions of the defendant in resistance to the test in this case (the lawfulness of the test being assumed) and the actions of an accused in resisting or avoiding lawful arrest, in escaping or fleeing from lawful custody, or in remaining silent in the face of an accusatory statement.[2] Evidence of the conduct of an accused person in the latter situations has long been admissible in Florida,[3] and we see no reason why an exception should be made under the circumstances in this case. This is not a situation where the refusal to submit to the test was conditional; that is to say, that the circumstances of the refusal are not relevant to a consciousness of guilt, but rather indicate that the refusal was due to reasons otherwise explainable (such as a refusal to submit to a chemical test unless the accused's own physician could perform it;[4] or refusal because of fear of pain from the test itself; or on religious grounds).[5] The acts and conduct of the defendant in this case, if given any probative force whatsoever, are susceptible of no prima facie explanation except consciousness of guilt; and evidence thereof is, we think, relevant, and certainly material. If the defendant is to avoid such inference he would, of course, be free to offer a reasonable explanation.
*419 Now, regarding its competency, while there are no cases on this precise question found in Florida, in other jurisdictions the general rule appears to be that such evidence is admissible if the scientific test itself is both admissible and compulsory.[6] In those jurisdictions in which evidence of the defendant's conduct in refusing to take an admissible test was excluded, the cases obviously turn on the fact that the test was not compulsory;[7] and certainly, we would agree, it would be unfair to hold such refusal against the defendant if he had a right to choose not to submit. A Florida case approaching the point appears to be Gay v. City of Orlando,[8] relied upon heavily by defendant herein. In that case the defendant refused to take a scientific breathalizer test; but it is patent therein that such refusal did not occur until after the officers told the defendant that he need not take the test. Evidence of such refusal was said to be inadmissible, as it should have been since, if for no other reason, it was violative of due process and fair play. No such choice was available to the defendant in the instant case. Here, the officers indicated they were going to administer the test regardless of refusal; and assuming, as we are, that the administration of the test was not violative of any constitutional mandate, they had a right to so indicate. The chemical test in this case, therefore is arguendo lawful and it was compulsory; and the defendant had no right to wrongfully refuse to cooperate in the administration thereof.[9]
We consider, next, whether the questioned evidence in this case is inadmissible because it is a "testimonial or communicative by-product" of the scientific test involved, and thus protected by the privilege against self-incrimination. Initially we can concede that the refusal to take the test, and the inferentially inculpatory acts and conduct of the defendant in such refusal, would be "testimonial and communicative" in nature. But in the first place we think his actions were a direct by-product, not of the administration of the test, but of the wrongful refusal to submit thereto; and wrongful conduct poisons its own fruit. It is no argument in refutation of this to say, in effect, that if the officers did not indicate the test was inevitable, the defendant would not have refused to submit. The refusal, as we have observed was wrongful in the first instance, and the officers had no duty to anticipate it; nor was there anything about the test procedures which would make the refusal, as testified to in this case, a foreseeably probable response of the defendant.[10]
Secondly, even if it can be said that the defendant's acts of refusal did foreseeably and necessarily flow from the administration of the test, and that therefore they were a by-product thereof, they were certainly performed by the defendant of his own volition, and not because he was induced to so act by any wrongful compulsion initiated or participated in by the officers. He cannot be heard to complain, therefore, that he was "compelled to incriminate himself" in violation of his 5th Amendment rights. Any comments to the contrary in Gay v. City of Orlando, supra, are purely dicta, and the conclusion reached under the facts in that case is sustainable, as we have observed, upon the principles involved in due process or fair play.
We conclude, therefore, that if the trial judge admits evidence of the results of the chemical test involved herein at the ensuing trial hereof, then the refusal of the defendant to submit thereto and the facts *420 and circumstances surrounding such refusal are also admissible against him as circumstances from which a consciousness of guilt might be inferred.
Reversed.
LILES, C.J., and PIERCE, J., concur.
NOTES
[1] Similar arguments were made and resolved in Schmerber v. California (1966), 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908.
[2] In this last example we exclude, of course, an "in custody" interrogation situation which would be within the Miranda rule. Miranda v. Arizona (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974. See also Jones v. State (Fla.App.3d 1967), 200 So.2d 574.
[3] See, e.g., Mackiewicz v. State (Fla. 1959), 114 So.2d 684; Daniels v. State (Fla. 1959), 108 So.2d 755; Cortes v. States (Fla. 1938), 135 Fla. 589, 185 So. 323.
[4] See, e.g., City of Columbus v. Mullins (1954), 162 Ohio St. 419, 123 N.E.2d 422.
[5] See footnote 9 in Schmerber v. California, supra.
[6] See the many cases cited in the annotation at 87 A.L.R.2d 370.
[7] E.g. Engler v. State (1957, Okl.Cr.), 316 P.2d 625; State v. Severson (1956, N.D.) 75 N.W.2d 316; People v. Stratton (1955), 286 App.Div. 323, 142 N.Y.S.2d 362, aff'd 1 N.Y.2d 664, 150 N.Y.S.2d 29, 133 N.E.2d 516.
[8] (Fla.App.4th 1967), 202 So.2d 896.
[9] People v. Sudduth (1966), 65 Cal.2d 543, 55 Cal. Rptr. 393, 421 P.2d 401.
[10] The test herein differs in this respect from a polygraph test, for example, in which a series of planned questions is calculated to elicit certain responses.