501 So.2d 19 (1986)
Calvin Joseph HERRING, a/K/a Calvin Mullins, Appellant,
v.
The STATE of Florida, Appellee.
No. 85-1851.
District Court of Appeal of Florida, Third District.
December 23, 1986.
Rehearing Denied February 4, 1987.
Bennett H. Brummer, Public Defender, and Ordonez, Friend & Fleck and Geoffrey C. Fleck, Sp. Asst. Public Defender, for appellant.
Jim Smith, Atty. Gen., and Nancy C. Wear, Asst. Atty. Gen., for appellee.
Before NESBITT, DANIEL S. PEARSON and FERGUSON, JJ.
DANIEL S. PEARSON, Judge.
During a police interview of the defendant shortly after his arrest on a charge of first-degree murder, he was asked if he *20 would submit to a "hand swab test for gunshot residue." The defendant was not told that he was required by law to take this test or that his refusal to do so could be used against him in some way. When an officer armed with gloves and equipment to administer the test came toward him, the defendant said he would not take the test. At trial, testimony of the defendant's refusal to "have his hands swabbed" was admitted over his objection, the prosecutor later arguing to the jury that this testimony was convincing proof of the defendant's consciousness of his guilt.[1] The admission of this testimony forms the primary basis of Herring's appeal from his conviction for the lesser offense of second-degree murder.
A defendant's behavior is circumstantial evidence probative of his consciousness of his guilt, and ultimately guilt itself, only when it can be said that the behavior is "susceptible of no prima facie explanation except consciousness of guilt." State v. Esperti, 220 So.2d 416, 418 (Fla.2d DCA), cert. dismissed, 225 So.2d 910 (Fla. 1969). In Esperti, the appellate court approved the admission of evidence that the defendant, after being told that he had no choice but to submit to a gunpowder test, resisted the test by sitting on his hands, wiping his hands with a handkerchief, and trying to rub tobacco ashes on his hands after learning that the ingredient in gunpowder can be confused with cigarette ashes. The Esperti court found that the case before it was not one where circumstances other than consciousness of guilt could have explained the defendant's refusal. As the Esperti court significantly noted, the defendant there had been told that he had no right to refuse the test; however, according to the court, had the defendant been told he could refuse, it would be "unfair" to admit evidence of his refusal. Id. at 419.
The unfairness, of course, is that a defendant who is told he may refuse and is told of no consequences which would attach to his refusal may quite plausibly refuse so as to disengage himself from further interaction with the police or simply decide not to volunteer to do anything he is not compelled to do. In contrast, if a defendant knows that his refusal carries with it adverse consequences, the hypothesis that the refusal was an innocent act is far less plausible. Thus, in South Dakota v. Neville, 459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983), the Court, holding admissible the defendant's refusal to take a blood alcohol test, pointed out that, although the defendant was not told that the refusal could be used against him in court, he was told that he could lose his driver's license if he refused. This latter warning made it "clear that refusing the test was not a `safe harbor,' free of adverse consequences." Id. at 566, 103 S.Ct. at 924, 74 L.Ed.2d at 760. While the court in Neville held the refusal admissible because the defendant had good reason not to refuse, it noted, in comparison, that in United States v. Hale, 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975), the Court had prohibited the impeachment use of the defendant's post-Miranda-warning silence because his "silence during police interrogation lacked significant probative value and ... any reference to his silence under such circumstances carried with it an intolerably prejudicial impact." Id. at 180, 95 S.Ct. at 2138, *21 45 L.Ed.2d at 107. See also Grunewald v. United States, 353 U.S. 391, 77 S.Ct. 963, 1 L.Ed.2d 931 (1957) (holding that a person's silence during interrogation is not inconsistent with his exculpatory testimony at trial in light of repeated assertions of innocence during interrogation, the secretive nature of the interrogation, and the focus on the defendant during the interrogation). Thus, while Neville stands for the proposition that evidence of the defendant's behavior (refusal to take the blood test) is admissible where the defendant had substantial motivation not to behave as he did, Hale stands for the corollary proposition that evidence of a defendant's behavior (remaining silent) is inadmissible, because not probative, where the defendant had no substantial motivation not to behave as he did.[2]
In the present case, because Herring was not told that his refusal to submit to the hand swab test would have consequences adverse to him (or even given the less specific, but certainly intimidating, warning that he had no right to refuse), he had no motivation to submit and his refusal, unlike Neville's and much like Hale's, was indeed a safe harbor. It being quite natural for a person to proceed to safe harbor, it cannot be said that the defendant's decision to do so is circumstantial evidence probative of his consciousness of his guilt. Moreover, there being absolutely no evidence to indicate that the defendant was told anything about the test  whether it was painful or painless, lengthy or short, scientifically reliable or not  it is clear to us that, even apart from the lack of warning about the adverse consequences of a refusal, the refusal is so entirely ambiguous as to be totally lacking in probative value.
The State argues, however, that because the test was in fact compulsory, the defendant's refusal is admissible.[3] The simple answer to this argument is that the fact that the test legally could have been compelled is not relevant in determining the probative value of the defendant's refusal to take the test or the unfairness of admitting evidence of the refusal. Thus, the compulsory nature of the test is relevant only if there is evidence that the defendant was aware of its compulsory nature. The failure to communicate to Herring that the test was compulsory carried with it, we think, the implicit suggestion that the test was permissive and that he thus had a right to refuse. Consequently, even if the refusal had some arguable probative value, its admission would be unfair where the police may have led the defendant to believe that he had a right to refuse. In such a case, the State may, through its implicit promise to the defendant that he has a right to refuse, dissuade the defendant from taking a test  the results of which might prove exculpatory  and thereafter enjoy the fruit of the dissuasion, that is, the introduction of evidence of the defendant's refusal. Such a result is unacceptable.[4]
*22 For these reasons we hold that the trial court erred in admitting evidence that the defendant refused to submit to the swab test and that the admission of this evidence prejudiced the defendant's right to a fair trial.
Reversed and remanded for a new trial.
NOTES
[1] The prosecutor's closing argument drove home the importance of the defendant's refusal:

"Well, you notice when the Defendant's cooperation stopped? When Officer Kidd went in and said, I'd like to do a test for gunshot residue on your hands. Was he cooperative then? No, he was not cooperative then. He said, no, you are not going to test my hands.... That means he's guilty. That means he knew what had happened, knew what that test might show and he wasn't taking any chances of letting that happen.
....
"Enter Officer Kidd. I'm here to do a hand swab for gunshot residue... . The defendant refused to have his hands swabbed for gunshot residue, almost to the minute, seven hours after the shooting occurred. What did he know that we don't know? More correctly, what did he know that we now also know? ... Why did the defendant refuse to have his hands swabbed for gunshot residue? I submit to you the answer to that is obvious."
[2] This principle was embodied in Section 316.1932(1)(a), Florida Statutes, with its passage in 1982. The statute expressly provides that a driver's "refusal to submit to a chemical breath or urine test upon the request of a law enforcement officer ... shall be admissible into evidence in any criminal proceeding," but only when the person has first been told that his failure to submit to either or both tests "will result in the suspension of his privilege to operate a motor vehicle... ." See State v. Sowers, 442 So.2d 239 (Fla. 5th DCA 1983) (Section 316.1932(1)(a), Florida Statutes, making refusal to submit to blood alcohol tests admissible after warning of adverse consequences, not unconstitutional under reasoning of South Dakota v. Neville). See also State v. Young, 483 So.2d 31 (Fla. 5th DCA 1985). Cf. Coleman v. State, 658 P.2d 1364 (Alaska Ct. App. 1983) (refusal to take breathalyzer test not per se admissible; prerequisite to admission is a reasonable attempt to communicate consequences of refusal). See generally Annot., 26 A.L.R.4th 1112 (1983).
[3] It is noteworthy that the officers did nothing to compel the test after the defendant's refusal and admitted that it was never their intention to attempt to administer the test if the defendant refused. Obviously, the message to the defendant was that the test was not compulsory.
[4] In the context of the State's use of a defendant's post-arrest, post-Miranda election to remain silent, the United States Supreme Court has recently re-emphasized that where the State implicitly promises that the exercise of a right will not be penalized, it is fundamentally unfair to allow the State to breach that promise by seeking to use the defendant's exercise of the right in order to obtain his conviction. Wainwright v. Greenfield, 474 U.S. ___, 106 S.Ct. 634, 88 L.Ed.2d 623 (1986).