846 So.2d 502 (2003)
Clotilde Estela MENNA, Petitioner,
v.
STATE of Florida, Respondent.
No. SC01-2174.
Supreme Court of Florida.
April 24, 2003.
Michael J. Snure of Kirkconnell, Lindsey, Snure and Yates, P.A., Winter Park, for Petitioner.
Charles J. Crist, Jr., Attorney General, and Belle B. Schumann, Assistant Attorney General, Daytona Beach, for Respondent.
ANSTEAD, C.J.
We have for review the decision in State v. Menna, 793 So.2d 1029 (Fla. 5th DCA 2001), which certified conflict with the decision in Herring v. State, 501 So.2d 19 (Fla. 3d DCA 1986). We have jurisdiction. See art. V, § 3(b)(4), Fla. Const. For the reasons expressed herein, we quash the Fifth District Court of Appeal's decision in Menna and approve the decision in Herring.

FACTS AND PROCEEDINGS TO DATE
Petitioner Clotilde Estela Menna's husband was shot outside of his office and taken to a hospital where he was pronounced dead. Menna arrived at the hospital and was sent to a waiting room where she met with the hospital chaplain. The chaplain informed her of her husband's passing and, thereafter, Menna met with the attending physician and nurse. Menna then unsuccessfully attempted to contact her sons, who were out of the country, to notify them of their father's death.
*503 Deputy Thomas McCann testified that he questioned Menna at the hospital. According to McCann's testimony, at some point during the questioning he asked Menna to voluntarily submit to a hand swab examination to test for gunpowder residue.[1] McCann informed Menna that the test was noninvasive and would only take a few minutes. Menna advised McCann that she would decline to submit to the test until she spoke to her attorney. McCann testified that Menna then unsuccessfully attempted to contact her attorney. Deputy McCann testified that he did not expressly indicate to Menna whether the test was mandatory or permissive, nor did he inform her that her refusal to take the test could be used against her in court. However, McCann agreed that his manner of questioning would have suggested the test was voluntary.
Later, Detective Richard Lallement arrived at the hospital and was informed by McCann of Menna's refusal to take the test. Lallement testified that he also asked Menna to submit to the gunshot residue test. Lallement stated that Menna responded by stating that she first wanted to talk to her attorney. Lallement could not recall ever telling Menna that her refusal could be used against her in court.
Menna was later charged with the murder of her husband. Before trial, the trial court granted Menna's motion in limine to preclude the State from referring to or presenting evidence of her refusal to submit to a gunpowder residue test on the day her husband was shot. The trial court set out its rationale in a written order:
On the evidentiary question, the Defense cites to Herring v. State, 501 So.2d 19 (Fla. 3d DCA 1986) and State v. Esperti, 220 So.2d 416 (Fla. 2d DCA 1969). The Defense asserts that a "defendant's behavior is circumstantial evidence probative of his consciousness of his guilt, and ultimately guilt itself, only when it can be said that the behavior is `susceptible of no prima facie explanation except consciousness of guilt.'" Herring v. State 501 So.2d at 20, citing State v. Esperti, 220 So.2d at 418. The Third District Court of Appeal pointed out that the defendant had refused to submit to a gunshot residue test which he was required by law to take. However, the defendant did not know that. He was not appraised of any adverse consequence which might result from his refusal to take the test. The court noted that it "being quite natural for a person to proceed to safe harbor, it cannot be said that the defendant's decision to do so is circumstantial evidence probative of his consciousness of his guilt." Id. at 21.
This Court is not persuaded that State v. Taylor, 648 So.2d 701 (Fla.1995) overrules Herring v. State or State v. Esperti in any respect. In the Taylor case the Florida Supreme Court noted that Taylor had ample incentive to take the field sobriety test and knew that his refusal was not a "safe harbor," free of adverse consequences.

*504 In the instant case there is no indication that Ms. Menna had any inkling that the refusal to take the test was anything other than a safe harbor and accordingly, this Court determines at this time that the Motion in Limine to Exclude Evidence of Failure to Submit to Gunshot Residue Test should be Granted.
The State petitioned the Fifth District Court of Appeal for a writ of certiorari quashing the trial court's order. The district court granted the petition, ordering that the trial court order be quashed.

ANALYSIS
The question presented to the trial court in the instant case was whether Menna's refusal to submit to the gunshot residue testing was sufficiently probative to show her consciousness of guilt to allow its admission into evidence, while considering its potential prejudicial effect. After conducting an evidentiary hearing, the trial court found that Menna's refusal was not sufficiently probative of her consciousness of guilt to be admitted into evidence because there was "no indication that Ms. Menna had any inkling that the refusal to take the test was anything other than safe harbor."
In determining that there was no indication that "Menna had any inkling that the refusal to take the test was anything other than a safe harbor" the trial court's order cited two district court cases where the admissibility of a defendant's refusal to submit to a gunpowder residue test was at issue. See Herring v. State, 501 So.2d 19 (Fla. 3d DCA 1986); State v. Esperti, 220 So.2d 416 (Fla. 2d DCA 1969). Based on the discrete facts presented, the district courts in Herring and Esperti reached different results as to whether the defendant's refusal to submit to a gunshot residue test was probative of the defendant's consciousness of guilt.

Esperti
In Esperti, the Second District approved the admission of refusal evidence, where the defendant had been told that he had no choice but to submit to the test, and he resisted the test by sitting on his hands, wiping his hands, and rubbing tobacco ashes on his hands after learning that cigarette ashes could be confused with gunpowder. See State v. Esperti, 220 So.2d 416, 417 (Fla. 2d DCA 1969). Under these circumstances, the Second District concluded:
The acts and conduct of the defendant in this case, if given any probative force whatsoever, are susceptible of no prima facie explanation except consciousness of guilt; and evidence thereof is, we think, relevant and certainly material. If the defendant is to avoid such an inference he would, of course, be free to offer a reasonable explanation.
Id. at 418 (emphasis supplied). Hence, the district court approved of the admission of the defendant's refusal to submit to testing under the particular factual circumstances presented.

Herring
On the other hand, the facts in Herring present different circumstances than those in Esperti. In Herring, the defendant was arrested and, shortly thereafter, the police requested that he submit to a hand swab gunshot residue test. See Herring, 501 So.2d at 20. The defendant refused to submit to the test but was not told that he was required to take the test, or that his refusal could be used against him. See id. At trial, testimony of the defendant's refusal to take the test was introduced over objection and the prosecutor argued to the jury that the testimony "was convincing proof of the defendant's consciousness of his guilt." Id.
*505 On appeal, the Third District held that it was error to admit evidence of defendant's refusal:
The failure to communicate to Herring that the test was compulsory carried with it, we think, the implicit suggestion that the test was permissive and that he thus had a right to refuse. Consequently, even if the refusal had some arguable probative value, its admission would be unfair where the police may have led the defendant to believe that he had a right to refuse.
Herring, 501 So.2d at 21. The Third District concluded that "[a] defendant's behavior is circumstantial evidence probative of his consciousness of his guilt, and ultimately guilt itself, only when it can be said that the behavior is `susceptible of no prima facie explanation except consciousness of guilt.'" Id. at 20 (quoting Esperti, 220 So.2d at 418).
Because we find its analysis sound and approve of its result, we quote Judge Pearson's opinion in Herring at length:
A defendant's behavior is circumstantial evidence probative of his consciousness of his guilt, and ultimately guilt itself, only when it can be said that the behavior is "susceptible of no prima facie explanation except consciousness of guilt." State v. Esperti, 220 So.2d 416, 418 (Fla. 2d DCA), cert. dismissed, 225 So.2d 910 (Fla.1969). In Esperti, the appellate court approved the admission of evidence that the defendant, after being told that he had no choice but to submit to a gunpowder test, resisted the test by sitting on his hands, wiping his hands with a handkerchief, and trying to rub tobacco ashes on his hands after learning that the ingredient in gunpowder can be confused with cigarette ashes. The Esperti court found that the case before it was not one where circumstances other than consciousness of guilt could have explained the defendant's refusal. As the Esperti court significantly noted, the defendant there had been told that he had no right to refuse the test; however, according to the court, had the defendant been told he could refuse, it would be "unfair" to admit evidence of his refusal. Id. at 419.
The unfairness, of course, is that a defendant who is told he may refuse and is told of no consequences which would attach to his refusal may quite plausibly refuse so as to disengage himself from further interaction with the police or simply decide not to volunteer to do anything he is not compelled to do. In contrast, if a defendant knows that his refusal carries with it adverse consequences, the hypothesis that the refusal was an innocent act is far less plausible. Thus, in South Dakota v. Neville, 459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983), the Court, holding admissible the defendant's refusal to take a blood alcohol test, pointed out that, although the defendant was not told that the refusal could be used against him in court, he was told that he could lose his driver's license if he refused. This latter warning made it "clear that refusing the test was not a `safe harbor,' free of adverse consequences." Id. at 566, 103 S.Ct. at 924, 74 L.Ed.2d at 760. While the court in Neville held the refusal admissible because the defendant had good reason not to refuse, it noted, in comparison, that in United States v. Hale, 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975), the Court had prohibited the impeachment use of the defendant's post-Miranda-warning silence because his "silence during police interrogation lacked significant probative value and ... any reference to his silence under such circumstances carried with it an intolerably prejudicial impact." Id. at 180, 95 S.Ct. at 2138, 45 L.Ed.2d at 107. See also *506 Grunewald v. United States, 353 U.S. 391, 77 S.Ct. 963, 1 L.Ed.2d 931 (1957) (holding that a person's silence during interrogation is not inconsistent with his exculpatory testimony at trial in light of repeated assertions of innocence during interrogation, the secretive nature of the interrogation, and the focus on the defendant during the interrogation). Thus, while Neville stands for the proposition that evidence of the defendant's behavior (refusal to take the blood test) is admissible where the defendant had substantial motivation not to behave as he did, Hale stands for the corollary proposition that evidence of a defendant's behavior (remaining silent) is inadmissible, because not probative, where the defendant had no substantial motivation not to behave as he did.
501 So.2d at 20-21.
The Third District concluded that it would be unduly prejudicial and unfair to admit evidence that a defendant had refused to take a test where the defendant is either told he or she may refuse the test, or the defendant is not told of any adverse consequences which would attach to the refusal. See id.

THIS CASE
In the instant case, we conclude the factual circumstances are closer to those presented in Herring than those involved in Esperti, and thus we conclude the trial court properly concluded that Menna's refusal may have been "so entirely ambiguous as to be totally lacking in probative value." Having determined the underlying factual circumstances as the trier of fact, the trial court properly applied the law set out in Herring.
Although we have not expressly addressed a situation where a defendant's refusal to submit to a gunpowder residue test was used as evidence of the defendant's consciousness of guilt, we have addressed criminal defendants' behavior as circumstantial evidence of consciousness of guilt in other contexts.[2]
In those instances we have held that before such refusal evidence can be introduced the court must make a prima facie determination that the evidence is relevant with regard to the defendant's consciousness of guilt.[3] This requirement implicitly recognizes that, as articulated by Judge Pearson in Herring, there are potentially many reasons, other than guilt, that a defendant might be motivated to refuse to *507 submit to such a test. Furthermore, under some circumstances, such as those in Herring, a refusal may be so ambiguous as to remove from its invocation any probative value in the refusal as to the issue of the defendant's alleged consciousness of guilt. We find no error in the trial court's determination that this was an appropriate conclusion here.
As in Herring, although Menna was informed that the test would be brief and was noninvasive, she was not told of any adverse consequences of her refusal to take the test and was given the impression that the test was optional. Although a defendant's refusal to permit police to conduct a test may be admissible where the police have informed the defendant that the law requires compliance, "[w]here ... the authorities fail to tell the defendant that compliance is required and that noncompliance may have adverse consequences, a refusal to comply may be of dubious relevance." 2 Clifford S. Fishman, Jones on Evidence, § 13:14, at 498 (7th ed.1994). Furthermore, unlike either of the defendants in Herring and Esperti, Menna was not yet a suspect, had not been arrested, and was not in custody at the time she refused to take the test. In addition, the evidence presented to the trial court indicated that her decision to refuse was also motivated by a cautious desire to speak with her attorney beforehand, a desire that cannot be categorically classified as necessarily motivated by consciousness of guilt.
Further, as in Herring, the trial court here was entitled to conclude on the facts that it "would be unfair where the police may have led the defendant to believe that he had a right to refuse" to allow Menna's refusal to be used against her because her decision to refuse was "safe harbor." Although neither Lallement nor McCann recalled explicitly telling Menna that the test was either compulsory or optional, McCann agreed that the nature of his questioning would have indicated to Menna that she had the option to refuse to take the test.
Under all of these circumstances, it cannot be said that the trial court's factual determinations on Menna's evidentiary claim and its reliance on the established law in Herring represent a departure from a clearly established principle of law resulting in a miscarriage of justice such that the district court should have granted the State's petition for writ of certiorari.[4]
*508 CONCLUSION
In the instant case, the trial court concluded that Menna was not told of any adverse consequences associated with refusing to take the test. Moreover, according to McCann, she was asked to submit to the test in a manner that made it seem optional. Thus, there were viable alternative explanations as to why she refused to take the test, including her desire to seek "safe harbor" or choosing to take the safest possible path totally devoid of negative consequences.
We conclude that the trial court was justified in relying on Herring and the law set out therein when it determined Menna did not have "any inkling that the refusal to take the test was anything other than a safe harbor." Accordingly, because Herring contains a sound analysis and was binding law as to similar facts, the trial court did not violate a clearly established principle of law resulting in a miscarriage of justice in granting the petitioner's motion in limine.
Accordingly, we quash the decision of the Fifth District in Menna, approve Herring and Esperti, and remand to the district court for further proceedings consistent herewith.
It is so ordered.
PARIENTE, LEWIS, and QUINCE, JJ., and SHAW and HARDING, Senior Justices, concur.
WELLS, J., concurs with an opinion.
WELLS, J., concurring.
I concur with the majority opinion, which I read to state the test of admissibility of this evidence was relevance and that the trial judge did not abuse her discretion in ruling that the evidence was not admissible because it was not relevant. However, I write to make clear that I do not endorse the statements in State v. Esperti, 220 So.2d 416, 418 (Fla. 2d DCA 1969), as followed in Herring v. State, 501 So.2d 19, 20 (Fla. 3d DCA 1986), which state that "[a] defendant's behavior is circumstantial evidence probative of his consciousness of his guilt, and ultimately guilt itself, only when it can be said that the behavior is `susceptible of no prima facie explanation except consciousness of guilt.'" I believe that statement is overly broad.
NOTES
[1] McCann testified that shortly before being asked to submit to the test, Menna had been to the bathroom a few times and it appeared to McCann that she had washed her hands on those occasions. Both the trial court's order and the district court's opinion state that McCann testified that Menna washed her hands after being asked to take the test. At oral argument, the State also argued that McCann testified that Menna had washed her hands after being asked to submit to the gunpowder test. However, although there is information in the record that Menna had been to the bathroom and washed her hands before being asked to submit to the test, there was no testimony that Menna continued washing her hands after being asked to submit to the test.
[2] Notably, in State v. Taylor, 648 So.2d 701, 704 (Fla.1995), we determined that the facts surrounding a defendant's refusal to take a field sobriety test were relevant to show his consciousness of guilt. Most often, a defendant's behavior has been deemed circumstantial evidence of consciousness of guilt in situations where there was evidence that the suspect fled or took other actions to avoid arrest and prosecution. See, e.g., Thomas v. State, 748 So.2d 970, 982 (Fla.1999); Escobar v. State, 699 So.2d 988, 995 (Fla.1997). However, where the defendant challenges the relevancy of such evidence, the state must adduce evidence that the defendant's behavior was related to an attempt to avoid being held accountable for the crime at issue. See, e.g., Escobar, 699 So.2d at 995 (holding that "there must be evidence which indicates a nexus between the flight ... and the crime(s) for which the defendant is being tried in that specific case"); see also Ford v. State, 801 So.2d 318, 320 (Fla. 1st DCA 2001) (noting that defendant's threats made to discourage a witness from testifying are relevant to show consciousness of guilt where threats have nexus with the crime charged).
[3] The provisions of the Florida Evidence Code defining relevant evidence and governing its admissibility are set forth in chapter 90, Florida Statutes (2001). In particular, section 90.401 defines relevant evidence as "evidence tending to prove or disprove a material fact," while section 90.402 states that "[a]ll relevant evidence is admissible, except as provided by law." §§ 90.401-.402, Fla. Stat. (2001).
[4] We also disagree with the district court, and agree with the trial court, that this Court's opinion in State v. Taylor, 648 So.2d 701 (Fla.1995), did not overrule Herring or Esperti in any respect. In Taylor, the Court addressed a situation similar to South Dakota v. Neville, 459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983), regarding whether admitting a defendant's refusal to submit to a DUI sobriety test constitutes compulsory self-incrimination, whether the Due Process Clause is violated by the introduction of such evidence, and whether the defendant's refusal was probative of consciousness of guilt from an evidentiary standpoint. See Taylor, 648 So.2d at 702.

In this Court, Taylor argued "that admission of the refusal would violate his constitutional rights and that his refusal is not probative of guilt." Id. at 703.
We first determined that the use of refusal evidence did not violate the defendant's federal or Florida constitutional rights, and then turned to the defendant's claim that refusal was inadmissible under the Florida Evidence Code. See id. We rejected this argument, reasoning that the defendant had ample incentive to take the tests: he knew the circumstances surrounding the request, he knew the purpose of the test, and he knew there were possible adverse consequences attached to refusal. See id. Taylor initiated the conversation about sobriety testing and indicated that he had previously discussed the advisability of taking such tests with his attorney. We also noted that Taylor "had some experience in this area," because of two previous DUI convictions. Id. at 704. Finally, the officer had read the defendant Florida's implied consent law and warned him that his refusal would have adverse consequences. Under these circumstances, we concluded that:
Given the strong incentives to take the tests, [the defendant's] claim that his refusal was an innocent act loses plausibility. In short, he knew refusal was not a "safe harbor" free of adverse consequences and acted in spite of that knowledge. His refusal thus is relevant to show consciousness of guilt. If he has an innocent explanation for not taking the tests, he is free to offer that explanation in court.
Id. Although not expressly mentioned in our Taylor opinion, a provision of the implied consent law, section 316.1932(1)(a), Florida Statutes (1991) requires the person under suspicion of intoxicated driving to be told that refusal to take the test will result in a one-year license suspension. If Taylor was read the implied consent law, he would have been aware of this adverse consequence to refusing to take the test. Sobriety tests, where the law requires that the person be informed of the adverse consequence of losing a license, are distinguishable from the type of hand-swab testing involved in Herring, Esperti, and the instant case.