DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**JASON D. ALLEN,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D13-4459

[May 18, 2016]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Jeffrey R. Levenson, Judge; L.T. Case No. 10007738CF10A.

Carey Haughwout, Public Defender, and Karen E. Ehrlich, Assistant Public Defender, West Palm Beach, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Richard Valuntas, Assistant Attorney General, West Palm Beach, for appellee.

GERBER, J.

The defendant appeals his conviction for second degree murder in a case where the victim's body never was found. The defendant argues the trial court erred in: (1) denying his motion for judgment of acquittal; and (2) denying his motion in limine to prohibit evidence of his pre-arrest refusal to submit to a DNA swab. We conclude without further discussion that the first argument lacks merit. However, on the second argument, we agree with the defendant and reverse for a new trial.

Although the state presented a great deal of evidence to prove the defendant's guilt, we present in this opinion only the evidence necessary to frame the second argument.

The defendant and the victim had been living together in an apartment. They were not getting along, and they eventually broke up a few days before the victim moved into her own apartment in the same complex. Two days after the victim moved into her own apartment, she disappeared.

After the victim's co-workers reported her missing, detectives went to her new apartment. Her car was in the parking lot. Her purse, passport, and cell phone were in the apartment. The master bedroom's door handle was damaged, and the master bathroom's shower curtain was missing. The detectives saw stains in the master bathroom. They collected swabs from the stains and sent the swabs to the evidence unit for analysis.

The detectives interviewed the defendant. He denied doing anything to harm the victim. During the interview, the following exchange occurred regarding whether the defendant would submit to a DNA swab:

DETECTIVE #1: . . . We have been to the apartment today. And what we want to do is collect your DNA to compare to anything we find. And we will know who is who. And what is what. Do you have a problem doing that?

DEFENDANT: No – um.

DETECTIVE #2: It is just a mouth swab.

DEFENDANT: Um –

DETECTIVE #2: All we do is swab your mouth.

DEFENDANT: Yeah.

DETECTIVE #1: You don't have a problem?

DEFENDANT: No. I mean. I am sorry. What is it?

DETECTIVE #1: DNA. You know so –

DETECTIVE #2: In other words, if somebody else was in the apartment besides you and [the victim], you will be able to prove that that was not you. That it was somebody else. Let's say that there was a third person in the apartment. We know you have been there. And we know [the victim] has been in there. If we could find that a third person or someone else was in there that may give us a clue as to who she might be with[.]

THE DEFENDANT: *What happens if I say no?* . . .

DETECTIVE #1: *It is your right.*

2

> DETECTIVE #2: *That's your right. You don't have to. We are just asking you to help us with the case. . . .*
>
> DEFENDANT: *So then I will say no.*

(emphasis added).

DNA analysis later showed it was the victim's blood in her master bathroom on the toilet's outer surface, the shower curtain rod, the ceiling vent, and four spots on the ceiling.

After the defendant was charged with second degree murder, he was compelled to submit to a DNA swab. His DNA was not present in the victim's apartment.

The defendant moved in limine to prohibit evidence of his pre-arrest refusal to submit to a DNA swab. He argued the detectives told him he had a right to refuse the DNA swab, and the state was seeking to use that refusal against him to show consciousness of guilt.

The state responded that the defendant's pre-arrest refusal to submit to a DNA swab was relevant to show consciousness of guilt. Specifically, the state argued that because the detectives had given the defendant an "innocent" reason for their request – to help the investigation – the only explanation for the defendant's refusal was consciousness of guilt.

The trial court denied the defendant's motion in limine, finding that the defendant's pre-arrest refusal to submit to a DNA swab was relevant and was not substantially outweighed by the danger of unfair prejudice.

During the trial, the defendant's pre-arrest refusal to submit to a DNA swab was admitted over the defendant's renewed objection.

In closing arguments, the state contended, among other things, that the defendant's pre-arrest refusal to submit to a DNA swab was proof of his guilt:

> [The defendant] does not want [the victim's disappearance] to be solved because he is the problem. . . .
>
> [The detectives] . . . talk to him about what is going on in the investigation.

3

Now, they have been in the apartment . . . there is some blood. . . . .

And they ask him for a DNA swab.  And they explain it to him.  And initially, he says yes.  And oh, oh, Why?

[Detective #2] says It would help us with the investigation. If you would give us this DNA swab.  It would help us. . . .

And what does [the defendant] do? I am not going to do that.  No.

They get it anyway later on.

But . . . when he has an opportunity to help, . . . [h]e opts not to help.

It would help us with the investigation.

No thanks.

The jury found the defendant guilty as charged of second degree murder.  This appeal followed.

The defendant argues the trial court erred in denying his motion in limine to prohibit evidence of his pre-arrest refusal to submit to a DNA swab.  According to the defendant, any probative value of consciousness of guilt arising from his refusal to submit to a DNA swab was substantially outweighed by the danger of unfair prejudice because the detectives told him that he had a right to refuse the DNA swab, and did not advise him of any adverse consequences of refusing the DNA swab.

We review the trial court's decision for an abuse of discretion, limited by the rules of evidence.  *See Evans v. State*, 177 So. 3d 1219, 1229 (Fla. 2015) ("A trial court's decision to admit evidence is reviewed under the abuse of discretion standard.  That discretion, however, is limited by the rules of evidence.") (internal citation and quotation marks omitted).

The rule of evidence applicable here is section 90.403, Florida Statutes (2013), which provides, in pertinent part:  "Relevant evidence is inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." § 90.403, Fla. Stat. (2013).

4

Applying the foregoing standard of review and rule of evidence, we conclude the defendant's argument has merit. We base our conclusion on our review of a similar Third District case, *Herring v. State*, 501 So. 2d 19 (Fla. 3d DCA 1986), a similar Florida Supreme Court case, *Menna v. State*, 846 So. 2d 502 (Fla. 2003), and a distinguishable Second District case, *State v. Esperti*, 220 So. 2d 416 (Fla. 2d DCA 1969). We address each in turn.

In *Herring*, the Third District held that a defendant's post-arrest refusal to submit to a hand swab gunshot residue test was inadmissible where the police did not tell the defendant that he was required to take the test or that his refusal could be used against him. 501 So. 2d at 20-21. We quote the Third District's reasoning at length because the Florida Supreme Court, in *Menna*, later quoted this reasoning with approval:

> [A] defendant who is told he may refuse and is told of no consequences which would attach to his refusal may quite plausibly refuse so as to disengage himself from further interaction with the police or simply decide not to volunteer to do anything he is not compelled to do. In contrast, if a defendant knows that his refusal carries with it adverse consequences, the hypothesis that the refusal was an innocent act is far less plausible. Thus, in *South Dakota v. Neville,* 459 U.S. 553, 103 S. Ct. 916, 74 L.Ed.2d 748 (1983), the Court, holding admissible the defendant's refusal to take a blood alcohol test, pointed out that, although the defendant was not told that the refusal could be used against him in court, he was told that he could lose his driver's license if he refused. This latter warning made it "clear that refusing the test was not a 'safe harbor,' free of adverse consequences." *Id.* at 566, 103 S. Ct. at 924, 74 L.Ed.2d at 760. While the court in *Neville* held the refusal admissible because the defendant had good reason not to refuse, it noted, in comparison, that in *United States v. Hale,* 422 U.S. 171, 95 S. Ct. 2133, 45 L.Ed.2d 99 (1975), the Court had prohibited the impeachment use of the defendant's post-*Miranda*-warning silence because his "silence during police interrogation lacked significant probative value and . . . any reference to his silence under such circumstances carried with it an intolerably prejudicial impact." *Id.* at 180, 95 S. Ct. at 2138, 45 L.Ed.2d at 107. . . . Thus, while *Neville* stands for the proposition that evidence of the defendant's behavior (refusal to take the blood test) is admissible where the defendant had substantial motivation not to behave as he did, *Hale* stands for the corollary

proposition that evidence of a defendant's behavior (remaining silent) is inadmissible, because [it is] not probative, where the defendant had *no* substantial motivation not to behave as he did.

*Id.* (other internal citation and footnote omitted).

In *Menna,* the Florida Supreme Court, after expressly approving *Herring*'s reasoning, held that a defendant's *pre-arrest* refusal to submit to a hand swab gunshot residue test was inadmissible where the defendant was not told of any adverse consequences of her refusal to take the test and was given the impression that the test was optional. 846 So. 2d at 507. The Court reasoned:

> [A]s in *Herring,* the trial court here was entitled to conclude on the facts that it would be unfair where the police may have led the defendant to believe that [she] had a right to refuse to allow [the defendant's] refusal to be used against her because her decision to refuse was "safe harbor." Although neither [detective] recalled explicitly telling [the defendant] that the test was either compulsory or optional, [one detective] agreed that the nature of his questioning would have indicated to [the defendant] that she had the option to refuse to take the test.

*Id.* (internal quotation marks omitted).

In *Esperti,* the Second District held that a defendant's refusal to submit to a hand swab gunshot residue test was admissible where the defendant had been told that he had no choice but to submit to the test, and he resisted the test by sitting on his hands, wiping his hands, and rubbing tobacco ashes on his hands after learning that cigarette ashes could be confused with gunpowder. 220 So. 2d at 417. The Second District reasoned that those actions, "if given any probative force whatsoever, are susceptible of no [p]rima facie explanation except consciousness of guilt; and . . . [i]f the defendant is to avoid such an inference he would, of course be free to offer a reasonable explanation." *Id.* at 418.

Here, as in *Herring* and *Menna,* the police did not tell the defendant that he was required to submit to a DNA swab or that his refusal could be used against him; instead, the defendant was given the impression that the test was optional and that refusal did not carry any adverse consequences. In fact, both detectives went so far as to tell the defendant that it was his "right" to refuse to submit a DNA swab. Further, unlike in *Esperti* and *Neville,* the defendant here was not told that he had no choice

6

but to submit to the test, or that if he refused, he could lose some privilege. Thus, we are compelled to follow *Herring* and *Menna* and hold that it was error to admit the defendant's pre-arrest refusal to submit to a DNA swab.

The state argues that if the trial court erred in admitting the defendant's refusal to submit a DNA swab, then the error was harmless because: (1) the defendant, after his arrest, provided a DNA sample; and (2) the defendant's DNA was not found at the victim's apartment, a fact which the defense emphasized in closing argument. *See State v. DiGuilio*, 491 So. 2d 1129, 1138 (Fla. 1986) ("The harmless error test . . . places the burden on the state, as the beneficiary of the error, to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction.").

We conclude a reasonable possibility exists that the error contributed to the conviction and, therefore, was not harmless. The fact that the defendant, after his arrest, provided a DNA sample which was not found in the victim's apartment does not negate the fact that his pre-arrest refusal to submit to a DNA swab, after both detectives told him that it was his "right" to refuse, was admitted to show his consciousness of guilt. Further, the fact that the state emphasized this erroneously admitted evidence in its closing argument also may have tainted the validity of the jury's verdict. *See Donaldson v. State*, 722 So. 2d 177, 185 (Fla. 1998) (state's emphasis during its closing argument of erroneously admitted evidence "obviously tainted the validity of the jury's recommendation and cannot be said to be harmless error").

Based on the foregoing, we reverse the defendant's second degree murder conviction and remand for a new trial.

*Reversed and remanded for new trial.*

STEVENSON and LEVINE, JJ., concur.

<p align="center">*        *        *</p>

**<p align="center">Not final until disposition of timely filed motion for rehearing.</p>**