# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D17-741

_____

KELVIN D. MADISON,

Appellant,

v.

STATE OF FLORIDA,

Appellee.

_____

On appeal from the Circuit Court for Leon County.
Angela C. Dempsey, Judge.

November 30, 2018

PER CURIAM.

Kelvin Madison was convicted of capital sexual battery, lewd or lascivious molestation, attempted capital sexual battery, and false imprisonment. On appeal, he argues that inadmissible evidence—his refusal to submit a DNA sample at an interview before he was arrested—was erroneously admitted.[1] We affirm Madison's convictions because the defense opened the door for the

---

[1] Madison also argues that the trial court erred in granting his motion for judgment of acquittal as to the attempt charge and that a new sentencing hearing was required. We affirm these arguments without comment.

admission of this evidence while cross-examining the investigator.[2]

## I.

At trial, the victim's mother testified that the victim was having regular menstrual cycles when she was ten years old, but missed them for three straight months. The mother had the victim urinate in a cup and bought two pregnancy tests, both of which returned positive. The mother asked the victim's godmother, who was in a relationship with Madison, to speak to the victim. When the victim identified Madison, the three went to the police station to file reports. One day soon after reporting the incident, the victim woke up in intense pain and bleeding heavily, and the mother brought her to the emergency room believing she might have suffered a miscarriage. The doctors did not want to put the young child through further examinations to determine if she had ever had sex. The godmother also testified that the victim identified Madison, adding that the two had spent a fair amount of time alone together for various reasons.

The victim testified that she considered Madison to be a godfather and loved him, but something bad had happened. She testified that she was in a bedroom at her godmother's house one day when Madison came in, took her clothes off, took his own clothes off, touched his penis to her vagina, touched her breasts, attempted to touch his penis with her mouth, and prevented her from leaving the room, warning he would hurt her if she told anyone what occurred.

Dr. Sarmed Ashoo, the physician who saw the victim when she was brought to the emergency room, could not tell if the victim had been pregnant. The victim's blood tested negative for the HCG pregnancy hormone, which would likely be in the blood of someone two months pregnant. However, Dr. Ashoo also testified that the victim could have tested negative for HCG if she

[2] Our holding on this issue renders superfluous any discussion as to whether the trial court's initial exclusion—based on *Menna v. State*, 846 So. 2d 502 (Fla. 2003), and *Allen v. State*, 192 So. 3d 554, 558 (Fla. 4th DCA 2016)—was correct.

2

had just had a miscarriage, and admitted to never before having a potentially pregnant eleven-year old as a patient.

The State also presented the testimony of Paul Osborn, an investigator in the special victims unit of the Tallahassee Police Department, who observed the victim's interview with the Child Protection Team and contacted Madison for an interview. A portion of the recorded interview was played where Madison stated that he was shocked that the victim was pregnant and did not know who was responsible. On cross-examination, Investigator Osborn explained that, although he collected evidence from the victim's home, including the underwear she wore on the night of the presumed miscarriage, none of the evidence collected contained fetal tissue relevant for DNA testing. Madison extensively questioned Investigator Osborn about his failure to secure additional evidence, particularly DNA evidence, additionally positing the following:

- So really what we have here, you have an abso – you have no DNA evidence. You did the investigation, right?
- So there's no DNA evidence from anything. You don't know whether the child or the person or the woman has had sex or not. So really what you have – the only thing you have is what the girl said.
- Do you have any other evidence besides the child's word that this guy raped her?

At a subsequent sidebar conference, the State moved to admit evidence that Madison refused to submit a DNA sample during his interview with Investigator Osborn—evidence the trial court ruled inadmissible prior to trial—arguing that Madison opened the door to such evidence. The trial court agreed that Madison opened the door and, over his objection, allowed the State to introduce the rest of Investigator Osborn's interview where he told Madison that they would be able to determine the father through a DNA comparison and Madison refused to provide a DNA sample.

3

## II.

We review a trial court's ruling on evidentiary issues for abuse of discretion. *See Brunson v. State*, 31 So. 3d 926, 928 (Fla. 1st DCA 2010). "Opening the door" is an evidentiary concept that "allows the admission of otherwise inadmissible testimony to 'qualify, explain, or limit' testimony or evidence previously admitted," is premised on fairness, and may be used to "negate the misleading impression given by defense counsel's" questioning. *Rodriguez v. State*, 753 So. 2d 29, 42 (Fla. 2000) (quoting *Tompkins v. State*, 502 So. 2d 415, 419 (Fla. 1986)). This concept applies "when one party's evidence presents 'an incomplete picture' and fairness demands the opposing party be allowed" to complete it. *Brunson*, 31 So. 3d at 928 (quoting *Hudson v. State*, 992 So. 2d 96, 110 (Fla. 2008)).

We find that the questions related to Investigator Osborn's investigation opened the door to the evidence that Madison refused to provide a sample of DNA. In *Dennis v. State*, 817 So. 2d 741, 751 (Fla. 2002), the police interviewed a witness who stated that he lent the defendant the shotgun used in the murders and threw out the gun when the defendant returned it afterwards. Cross-examining the detective who conducted the interview, the defense "focused on the failure of the police to pursue" this individual, who the defense argues was the prime suspect, attempting "to demonstrate that the police essentially 'chose' to believe" the witness. *Id.* at 751-52. The trial court permitted the investigator to rely on hearsay testimony to respond to this accusation. *Id.* at 752. The Florida Supreme Court held that the cross-examination opened the door for the State to rebut "the defense's implication that the officers' investigation was less than thorough, relying solely on [the witness's] word to arrest the defendant." *Id.* at 753.

Similarly, Madison suggested that Investigator Osborn was less than thorough ("You did the investigation, right?") and the arrest relied solely on the victim's words ("So really what you have – the only thing you have is what the girl said," and "Do you have any other evidence besides the child's word that this guy raped her?"). Madison's refusal to submit a DNA sample, which might easily rule him out as the individual who impregnated a

ten-year old, could be considered suspicious and tending to corroborate the victim's allegations and identification of Madison as the perpetrator. In this context, Madison's cross-examination asking whether Investigator Osborn had *any* evidence besides the victim's allegations, while knowing he was not permitted to mention Madison's own refusal to provide DNA, opened the door for the State to admit the rest of the recorded interview. We find no abuse of discretion in the trial court's ruling.

AFFIRMED.

B.L. THOMAS, C.J., and WINOKUR, J., and KETCHEL, TERRANCE R., ASSOCIATE JUDGE, concur.

———————————————

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

———————————————

Michael Ufferman of Michael Ufferman Law Firm, P.A., Tallahassee, for Appellant.

Pamela Jo Bondi, Attorney General, and Julian E. Markam, Assistant Attorney General, Tallahassee, for Appellee.