COHEN, J.
Craig Howitt appeals his convictions for leaving the scene of an accident with death, driving under the influence ("DUI") causing damage to property or injury, and *221 DUI causing death/failure to render aid.[1] We find no merit to Howitt's challenge to his conviction for leaving the scene of an accident with death and affirm. However, we reverse Howitt's convictions for DUI causing damage to property or injury and DUI causing death/failure to render aid and remand for a new trial on those charges.
Howitt was driving his SUV in the early morning hours when he rear-ended and killed the victim, who was operating a motor scooter. Howitt continued driving and eventually stopped after he struck a sign in the median of the road. He exited his SUV, and witnesses observed him briefly staggering around the median before reentering his vehicle. Witnesses urged Howitt to remain at the scene, but he refused.
Because his windshield was cracked, the hood of his SUV was up, and steam was coming from the radiator, Howitt drove down the highway with his head hanging out of the driver's side window. Law enforcement pulled Howitt over a short distance from the scene of the crash. He initially agreed to perform field sobriety tests, but after officers transported Howitt to the police station to conduct the tests, he refused. Howitt also refused to take a breath test.
Before trial, Howitt moved to suppress the evidence that he refused to submit to both tests. At the suppression hearing, the Florida Highway Patrol's lead crash investigator testified that the officers involved never read Howitt Florida's implied consent law relating to a breath test, nor did they inform him of any possible adverse consequences for refusing to perform the field sobriety tests. The trial court denied Howitt's motion to suppress.[2] As will be detailed, this was error.
We first address Howitt's refusal to take a breath test. Florida, along with every other state, has an implied consent law that requires drivers to submit to a blood-alcohol concentration test if stopped on suspicion of driving while impaired. See Birchfield v. North Dakota, --- U.S. ----, 136 S.Ct. 2160, 2166, 195 L.Ed.2d 560 (2016). Florida's implied consent statute, section 316.1932(1)(a)1.a., Florida Statutes (2016), provides:
Any person who accepts the privilege extended by the laws of this state of operating a motor vehicle within this state is, by so operating such vehicle, deemed to have given his or her consent to submit to an approved chemical test or physical test including, but not limited to, an infrared light test of his or her breath for the purpose of determining the alcoholic content of his or her blood or breath if the person is lawfully arrested for any offense allegedly committed while the person was driving or was in actual physical control of a motor vehicle while under the influence of alcoholic beverages.... The person shall be told that his or her failure to submit to any lawful test of his or her breath will result in the suspension of the person's privilege to operate a motor vehicle for a period of 1 year for a first refusal, or for a period of 18 months if the driving privilege of such person has been previously suspended as a result of a refusal to submit to such a test or tests, and shall also be told that if he or she refuses to submit to a lawful test of his or *222 her breath and his or her driving privilege has been previously suspended for a prior refusal to submit to a lawful test of his or her breath, urine, or blood, he or she commits a misdemeanor in addition to any other penalties. The refusal to submit to a chemical or physical breath test upon the request of a law enforcement officer as provided in this section is admissible into evidence in any criminal proceeding.
Here, inexplicably, the officers failed to comply with this statutory provision.[3] The issue before us is not the admissibility of a breath test, but rather, the admissibility of Howitt's refusal to submit to such test. In South Dakota v. Neville, 459 U.S. 553, 565, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983), the United States Supreme Court held that it was not "fundamentally unfair for South Dakota to use the refusal to take [a blood-alcohol] test as evidence of guilt, even though [the defendant] was not specifically warned that his refusal could be used against him at trial." Still, many states have held that if a suspect is not informed of the adverse consequences of refusing to take tests used to investigate suspected intoxication under the state's implied consent laws, evidence of the suspect's refusal to comply cannot be introduced as evidence of consciousness of guilt. See State v. Warren, 957 A.2d 63, 67 (Me. 2008) ("At trial on a charge of operating under the influence, a defendant's refusal to submit to a blood-alcohol test is admissible if, prior to the refusal, the defendant was properly warned of the consequences of failure to submit to a blood-alcohol test."); People v. Lucifero, 146 A.D.3d 811, 45 N.Y.S.3d 166, 168 (2017) ("[T]he law provides for what happens when drivers refuse to take a blood alcohol test. Among the consequences are the automatic revocation of the person's driver license, and the admissibility at trial of evidence that the driver refused to take the test. The only proviso is that these consequences may be imposed only if the driver has been sufficiently warned of them in advance of the refusal." (citations omitted) ).
We previously addressed the admissibility of the refusal to take a breath test in Grzelka v. State, 881 So.2d 633 (Fla. 5th DCA 2004). There, Officers read Grzelka some, but not all, of the implied consent warnings before asking her to submit to a breath test, which she refused. Id. at 634. In finding no error in the admission of her refusal as evidence, we held:
Evidence that a suspect refused investigative testing is relevant because it tends to prove a consciousness of guilt, provided that the suspect first was informed that adverse consequences would flow from his or her refusal. Menna v. State, 846 So.2d 502, 505 (Fla. 2003). Here, because Appellant was advised of at least one adverse consequence that would result from her refusal, her decision to refuse was relevant and the trial court did not abuse its discretion in admitting the evidence.
Id. at 634-35.
In Menna, 846 So.2d at 502-08, the defendant was suspected of shooting her husband. At the hospital, law enforcement asked Menna if she would submit to a brief and noninvasive gunpowder residue test. Id. at 503. Law enforcement did not indicate whether the test was mandatory and *223 did not disclose any adverse consequences that would follow if Menna refused to submit to the test. Id. Rather, they gave her the impression that the test was optional. Id. Menna refused to submit to the test, and the State subsequently charged her with murder. Id. Before trial, she moved in limine to preclude the State from introducing the evidence of her refusal, which the trial court granted, finding Menna's refusal to be a safe harbor. Id. at 503-04.
The Florida Supreme Court agreed, holding that "the trial court here was entitled to conclude on the facts that it 'would be unfair where the police may have led the defendant to believe that he had a right to refuse' to allow Menna's refusal to be used against her ...." Id. at 507 (quoting Herring v. State, 501 So.2d 19, 21 (Fla. 3d DCA 1986) ). Besides consciousness of guilt, alternative explanations existed for Menna's refusal, "including her desire to seek 'safe harbor' or choosing to take the safest possible path totally devoid of negative consequences." Id. at 508. Further, the court noted:
The unfairness, of course, is that a defendant who is told he may refuse and is told of no consequences which would attach to his refusal may quite plausibly refuse so as to disengage himself from further interaction with the police or simply decide not to volunteer to do anything he is not compelled to do. In contrast, if a defendant knows that his refusal carries with it adverse consequences, the hypothesis that the refusal was an innocent act is far less plausible.
Id. at 505.
Unlike the defendant in Grzelka, in this case, by the investigator's own admission, the officers did not read Howitt any portion of the implied consent law or otherwise inform him of any consequences of refusing to take a breath test. Therefore, his refusal was insufficient to establish consciousness of guilt, and the trial court should have granted his motion to suppress his refusal to submit to a breath test. See Menna, 846 So.2d at 502-08.
A similar analysis is required for Howitt's refusal to perform the field sobriety tests. In State v. Taylor, 648 So.2d 701 (Fla. 1995), the Florida Supreme Court addressed the admissibility of such refusals. The arresting officer in the case did not expressly tell Taylor that his refusal could be used against him in court, but told him the purpose of the tests and explained that he would be subject to arrest based upon the available evidence. Id. at 702-05. Stated differently, Taylor's decision to decline the offer to demonstrate a lack of impairment would result in the officer relying upon his observations to determine impairment, which could lead to Taylor's arrest. In finding that the trial court did not err in admitting Taylor's refusal, the supreme court reasoned that because the officer informed Taylor of the possible adverse consequences of refusing to perform the field sobriety tests, his refusal was probative of his guilt. Id. at 704.[4]
Here, as with the breath test, the investigator testified at the suppression hearing that the officers did not advise Howitt of any adverse consequences of refusing to perform the field sobriety tests. As a result, the trial court should not have allowed Howitt's refusal into evidence. Cf. Menna, 846 So.2d at 502-08 ; Taylor, 648 So.2d at 701-05.
The improper admission of evidence is subject to a harmless error analysis. E.g., *224 Denmark v. State, 927 So.2d 1079, 1082 (Fla. 2d DCA 2006). The State has the burden "to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction." State v. DiGuilio, 491 So.2d 1129, 1135 (Fla. 1986) (citing Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) ). "[T]he harmless error test is not a 'sufficiency of the evidence' test or an 'overwhelming evidence' test because the relative strength of the permissible evidence does not negate the fact that the impermissible evidence may have played a substantial part in the jury's deliberation." Jackson v. State, 107 So.3d 328, 342 (Fla. 2012) (quoting DiGuilio, 491 So.2d at 1136 ).
Based upon our review of the record, we cannot say that the State met its burden of establishing that the admission of the refusal to take a breath test and perform the field sobriety tests constituted harmless error in this case. A reasonable possibility exists that evidence of Howitt's refusal to participate in both tests contributed to his convictions. Cf. Lampkin v. State, 445 So.2d 673, 674 (Fla. 4th DCA 1984) (noting that the "improper admission of actual test results constituted only harmless error where other competent evidence established the appellant's state of intoxication").[5]
Accordingly, we affirm Howitt's conviction for leaving the scene of an accident with death, and reverse and remand for a new trial on the charges of DUI causing damage to property or injury and DUI causing death/failure to render aid.
AFFIRMED IN PART; REVERSED IN PART; and REMANDED.
EISNAUGLE, J., and JACOBUS, B.W., Senior Judge, concur.

Sections 316.027(2)(c), 316.193(3)(c)1., and 316.193(3)(c)3.a., Florida Statutes (2016), respectively.

Law enforcement obtained a blood sample from Howitt without first securing a search warrant, the results of which the court excluded from evidence. See Missouri v. McNeely, 569 U.S. 141, 133 S.Ct. 1552, 185 L.Ed.2d 696 (2013). The State does not challenge this ruling.

We suspect that law enforcement conflated the provision for securing a breath or urine test under section 316.1932 with section 316.1933, the provision for obtaining a blood sample in cases of death or serious injury when law enforcement has probable cause to believe that a driver is under the influence. The latter does not require that law enforcement read Florida's implied consent warnings to a suspected offending driver.

Additionally, the court held that the use of Taylor's refusal at trial did not violate the due process clause of either the Florida or federal constitution. Taylor, 648 So.2d at 704.

Further, "the fact that the state emphasized this erroneously admitted evidence in its closing argument also may have tainted the validity of the jury's verdict." Allen v. State, 192 So.3d 554, 558 (Fla. 4th DCA 2016) (citing Donaldson v. State, 722 So.2d 177, 185 (Fla. 1998) ).